Munson *v.* Minor.

---

WILLIAM MUNSON, Plaintiff in Error, *v.* SAMUEL E. MINOR, Defendant in Error.

ERROR TO LA SALLE.

Directors of district schools have power to levy taxes for the purpose of supporting a school for six months in the year, without first submitting the question to a vote of the inhabitants; but cannot erect a house costing more than $1,000, nor change a site.

The powers and duties of school officers, in reference to imposing and collecting taxes under the school laws of 1857, considered and discussed.

Munson *v.* Minor.

The provision which requires a map of the school district to be furnished to the county clerk, to aid in the extension of the tax, is directory, and the defect may be cured by the revenue act of 1853.

A court of equity will not enjoin a tax for mere errors, if it is attempted to be levied by an officer *de facto*, under authority incident to his office; but may do so, if the levy is by one without pretense of authority, or color of office to which such a right is an incident.

THIS bill alleges that Munson owns the north-east quarter and south-east quarter, section 1, township 35 north, range 3 east, and lives on the south-east quarter; that said land is a part of school district No. 5, in Serena, township 35, range 4 east, and has been for six or seven years.

That the directors of district No. 5, levied a tax of twenty-five cents on each $100 of property in said district, for 1858, and returned said Munson as one of the tax-payers; but whether or not said tax was carried out, on the collector's book, complainant does not know.

That the north-east quarter is assessed at $987, the south-east quarter at $1,920, and the personal property of complainant at $1,493.

That the directors of district No. 9, township 35 north, range 3, in Freedom, levied a tax of $2 on each $100 of property in said district for 1858, and returned complainant as one of the tax payers of said district.

That the tax in No. 9 was carried out on the collector's book against said south-east quarter, and on the personal property of said Munson, and amounted to $68.24.

That there is no map of districts, in township 35 north, range 3 east, on file or recorded in the county clerk's office, as required by law, but only a paper with lines drawn thereon, from which the county clerk pretends to determine what lands lie in district No. 9. That by said paper it does appear that said south-east quarter is in No. 9, but that it was a mistake to represent the south-east quarter in No. 9, and contrary to the intentions of the school trustees of Freedom.

That such trustees, in conjunction with trustees of township 35 north, range 4 east, in the spring of 1858, before the tax was levied, corrected said mistake.

That the tax in No. 9, was not submitted to the voters thereof, for approval or rejection.

That defendant is collector of the town of Freedom, 35 north, range 3 east; has received his warrant for collecting the taxes of 1858, and intends to force the collection of said school tax from said complainant.

Prayer to enjoin collection of $68.24, school tax.

Injunction issued as prayed for.

The answer admits that Munson is the owner of said lands, and that the north-east quarter is in district No. 5, and distinctly denies that the said south-east quarter, on which Munson resides, has been for six or seven years a part of district No. 5, in the town of Serena; but that in 1853, a district was created, including the south-east quarter, called district No. 9.

That it continued to form a part of district No. 9, until October, 1858, when it was attached to No. 5, in Serena, township 35 north, range 4 east, but that was not done until after the school tax mentioned in the bill, was estimated and levied.

Admits that the tax levied in district No. 5, was as stated in the bill, and denies that it was carried out on the collector's book against said south-east quarter, and the said personal property.

Admits that the assessed value on all said property is as alleged in the bill, and that the school tax of district No. 9, on the south-east quarter, and the personal property, is $68.24 in all.

Neither admits nor denies the allegations of the bill concerning the map, and alleges that whether there is any map or not is immaterial, and denies that it was a mistake to represent the south-east quarter as belonging to district No. 9, as alleged in the bill.

Admits that said tax for No. 9, was not submitted to the voters of said district, for approval or rejection, but alleges that the tax was not for building or repairing a school-house, but for extending the term of schools for a longer time than the regular school fund would pay for, not to exceed in all six months in said year, and that the law did not require such submission.

Admits that defendant is collector of Freedom, township 35 north, range 3 east; that he has received his warrant for collecting taxes, and intends to enforce the collection of said school tax, from the complainant.

The evidence shows that on the hearing of the cause, the complainant admitted that said south-east quarter was, at the time the tax was levied, a part of district No. 9.

The complainant introduced the following certificate:

We, the undersigned, directors of district No. 9, township 35, range 3, in the county of La Salle, and State of Illinois, do hereby certify, that said board have estimated and required to be levied, for the year 1858, the rate of one 50-100 dollars on each one hundred dollars valuation of taxable property in said district, for paying teacher and extending term of schools, and fifty cents for general school purposes, on each one hundred dollars valuation.

Given under our hands, this 26th day of June, 1858.

MAHLEN DECKERSON, ⎫
JAMES SKETTER, ⎬ *Directors.*
JOHN COREY, ⎭

There was a decree dissolving the injunction and dismissing the bill.

The errors assigned are, the dissolving the injunction and dismissal of the bill, and refusing to grant a perpetual injunction.

J. AVERY, for Plaintiff in Error.

W. H. L. WALLACE, for Defendant in Error.

WALKER, J. It is urged that directors of district schools, have no power to levy taxes for school purposes without submitting the question to a vote of the inhabitants of the district. This of course depends upon the power delegated to them by the law creating them a board of directors. The 43rd section of the act " To establish and maintain a system of Free Schools," Scates' Comp. p. 445, confers full power without any limitation upon the directors, for the purpose of erecting school-houses, or purchasing school-house sites, or for the repairing and improving the same, for procuring furniture, fuel and district libraries, and for the purpose of paying the balance due teachers, after the State and township funds are exhausted, to have levied and collected a tax annually, on all the property in their district. This section gives ample power to levy a tax, to any extent that may be necessary for these various purposes.

By the 44th section the directors are required at their annual meeting in October or some meeting thereafter, before the first Monday in July, to determine by estimate as near as practicable, the entire amount of money necessary to be expended in the district, to keep in good condition and operation a sufficient number of free schools for the accomodation of all the children in said district, during the ensuing year, over and above the available funds arising from the township fund, or from other sources, and also such additional amount as the board may think necessary, for the exclusive purpose of supplying any deficiency in the fund for the payment of teachers, and for the purpose of extending the terms of schools, after the State and common school fund shall have been exhausted ; and shall determine as nearly as practicable, what rate per cent. on the one hundred dollars valuation, of all the taxable property in the district each of said amounts, separately, will require to be levied ; each of which rates so estimated and required to be levied, together with a list of all the resident tax-payers of the district, the board of directors shall make known by certificate in writing, signed by the president and clerk of the board, or at least two directors, to the clerk of the County Court, on or before the

first Monday in July next thereafter, in each year : Provided the people vote the same as hereinafter expressed.

The 45th section provides the modes of extending the tax on the collector's books, and for the collection and payment of the same to the treasurer. The 46th section confers jurisdiction upon the County Court, to render judgment against collectors for a failure to pay the tax or any part of it, over to the treasurer. And provides for a forfeiture of twelve per cent. for a default in such payment.

The 47th section makes provision for the collection of taxes in districts, composed of territory of two or more counties. It then provides, that districts may borrow money for the purpose of erecting school-houses, purchasing sites for the same, or for repairing and improving them, at a rate of interest not exceeding ten per cent. per annum, and to issue bonds therefor, and provides, that the total indebtedness of the district under this section, shall not exceed at any time, three per cent. per annum, of the assessed value of the real and personal estate of the district. And with a further proviso, that the same shall be voted by a majority of the votes cast at any election, on notice given as required.

The 48th section creates the directors of each district a body politic and corporate, by their appropriate name. Prescribes the mode of transacting the business of the district, and then prescribes their duties. " They shall establish a sufficient number of common schools for the education of every individual person over the age of five and under twenty-one years, in their respective districts, and shall make the necessary provision for continuing such schools in operation, for at least six months in each year, and longer if practicable. They shall cause suitable lots of ground to be procured and suitable buildings to be erected, purchased or rented for school-houses ; shall supply the same with furniture and fuel, and make all other provisions relative to schools which they may deem proper ; they may adopt rules for the government of schools and shall exercise a general supervision over the schools of their respective districts, and shall by one or more of their number visit every school in the district at least once a month, and shall cause the result of such visit to be entered on the records of the board." It also provides for the employment of teachers, and for the application of surplus funds to the purchase of libraries and apparatus, in the discretion of the directors. It then provides that, " No school site shall be purchased, nor shall a school-house be erected, located, purchased or changed without the consent of a majority of the legal voters of any district at an election, in which case notice shall be given in the same manner, and for the same

number of days, as is required for the election of directors, either by the directors, or, at least, ten legal voters of the district: *Provided, however,* If a majority of the votes at said election is not obtained for any site, the directors shall have power to locate and build a school-house which shall not cost over the sum of one thousand dollars; nor shall the directors have power to levy taxes for the purpose of extending the terms of schools for a longer period than six months in each year; nor for the purpose of building a school-house to cost over the sum of one thousand dollars without the consent of a majority of the votes cast at said election. The notice shall state the questions to be decided at said election."

These are believed to be the only provisions of the law in force at the time this tax was levied, conferring power on directors of common schools to levy and collect taxes for school purposes. And from the phraseology of these various provisions there is a want of clearness of expression, that leads to some doubt as to the intention of the legislature. Had there been no other provision than that contained in the 43rd section, it would have been manifest that the directors would have a discretionary power to levy a tax for all the purposes enumerated in the section, without any control of the voters or tax payers. And unless it has been limited by subsequent provisions, they are still invested with such a power. The 44th section does limit that power, in so far only as it relates to levying a tax, to supply any deficiency in the State and township fund for the payment of teachers and for extending the terms of schools, after that fund has been exhausted, as to require a vote of the same as thereinafter expressed.

If this had been all the legislation, they would have had the power to levy, without the consent of the voters of the district, for every purpose enumerated, except for the deficiency in the State and township fund, for the payment of teachers and for the extension of the terms of schools, after that fund was exhausted. But the subsequent provision contained in the 47th section, limits the borrowing of money, to an amount not exceeding three per cent. on the assessed value of the property of the district, and to the consent of the majority of the voters, at an election for the purpose. And the 48th section, peremptorily requires the directors to establish and maintain a sufficient number of common schools, to accomodate all the persons entitled to the benefits of such schools in their districts, and to make provision for continuing them in operation, for at least six months in each year, and longer if practicable. The very fact that it is imposed as a positive duty, without any discretion, implies the power to raise the necessary means. And to provide the means, they must re-

sort to the power conferred. And as the direct means are not enumerated in this section, we must resort to other provisions of the act, and in the 43rd and 45th sections, it is explicitly conferred, and the mode pointed out. The proviso in the 44th section is repugnant to the provisions of the 48th section. The former provision, limits the levy for paying teachers and extending the terms of schools by taxation, to a consent of the majority of the voters of the district, while the latter section requires them to provide and keep in operation a sufficient number of schools, for at least six months in each year, without any reference to a consent of the voters of the district. If the former provision were to prevail, it would defeat the design of the latter. If the voters refused to tax for the purpose, the directors could not continue schools beyond the period that the State and township funds would provide for. And as the two provisions are repugnant, the latter must prevail, as the last expressed will of the legislature. This construction is also made more manifest, as the true one, when we see, that in case the directors continue the school beyond the period of six months by taxation, the tax must be levied by a vote of the district. Why insert such a provision, if they were prohibited in all cases from levying a tax for a deficiency, to pay teachers and extend schools beyond the period the State and township funds would provide. If it was intended that the proviso in the 44th section should remain in force, this last limitation upon levying a tax to extend schools beyond six months, was entirely useless. The 48th section also prohibits the purchase, by the directors, of a site for a schoolhouse, the erection or location, the change or purchase of a school-house, without the consent of a majority of the voters of the district, unless the voters, at the election, shall fail to select a site, in which case, the directors are empowered to select a site and build a house, not to cost more than one thousand dollars. In a previous portion of this section, they are peremptorily required to purchase sites and erect and furnish schoolhouses, and were it not for this provision, their discretion and judgment would be the limit to their action as to the amount of its cost, as well as its location. This section then, limits the power conferred on the directors by the 43rd section, and prohibits a levy of a tax to extend schools beyond the period of six months in each year, or from purchasing or erecting a schoolhouse, to cost more than one thousand dollars, or from changing the site of a school-house, and confers these powers upon the voters of the district.

In this case, the levy of the tax was not to extend the term of the schools of the district beyond six months in the year, nor was it to build a school-house, the cost of which would exceed

one thousand dollars. It appears, on the contrary, to have been levied to pay teachers and to support the schools of the district, for the period of six months, as required by the statute, and for general school purposes. This they had authority to do, and were required by the statute to perform it as a duty. Even if the question had been submitted to the people, whether this tax should be levied, and they had decided against it, the directors should nevertheless have proceeded to levy and collect it.

It was urged that the case of *Beverly* v. *Sabin*, 20 Ill. R. 357, holds such a vote to be necessary. In that case, the directors, without having submitted the question to a vote of the district, proceeded to levy a tax to pay for a school-house, which had been constructed without the consent of the voters, at a cost of more than one thousand dollars. That case holds, that they had no power to make the levy, without its being submitted to the voters of the district. And although that opinion does not in terms refer to the 48th section, it is based upon its provisions, and is in harmony with the construction here given, to those sections of the law.

It was also insisted that the plat of the district, furnished to the county clerk, was not properly certified, and conferred upon that officer no authority to extend the tax on the collector's warrant. The object in requiring this map to be returned, was to enable the clerk to correctly extend the tax against the tax payers of the district. This map was not certified by the president and clerk of the board of directors, as required by the act, but when we consider the object of the law, we are inclined to the opinion that the provision is only directory, and as there is no pretense but that the clerk has extended the tax correctly, that it can form no objection in a collateral proceeding. If this were an objection, it only relates to the mode of assessment, and the 44th section of the revenue act of February 12th, 1853, (Scates' Comp. 1042,) which was in force when this levy was made, provides that "no assessment of property or charge for taxes thereon, shall be considered illegal, on account of any informality in making the assessment, or in the tax lists, or on account of the assessments not being made or completed within the time required by law," which is certainly broad enough in its terms, to cover this defect. It is only urged that this certified plat was requisite, because it was one of the formal requirements of the statute in levying the tax. This provision was doubtless intended to cover formal defects of this character.

Upon a careful examination of all the elementary treatises on equity jurisprudence, as well as the adjudged cases to which we have had access, we do not find that a court of equity has assumed jurisdiction to enjoin a tax, for mere errors in its assess-

39

ment or the collector's warrant, in case it was levied by officers *de facto*, when authority to levy such a tax, was incident to their office. And it is believed that the cases are rare, even where the tax had been levied by persons having no pretense of legal authority to make such a levy, or in cases where the tax was not authorized by law, or where the warrant for its collection was void, that courts have interposed to stay its collection. In the few cases that we have found, where relief was granted, no question as to jurisdiction was raised. No rule is more familiar than that courts of equity will not interpose to give relief, in cases where the party has a full and complete remedy at law, unless it be where the jurisdictions are concurrent. That in case of a levy of an illegal tax, a court of law has jurisdiction, there can be no doubt. If the directors had the legal right to levy the tax, they no doubt have the right to collect it, and if they were not vested with such a power, or if they failed to observe essential legal requirements in its exercise, it would be void, and if coerced by distress, they would be guilty of a wrong, for which a court of law would afford an adequate remedy. *Trustees of Louisville* v. *Gwathmey*, 1 A. K. Marsh. 554. If persons having no pretense of legal authority, were to levy a tax, or if persons not holding an office to which the power to levy a tax is incident, or holding an office to which it is not incident, were to levy a tax, the court might interpose. But if officers *de facto* or *de jure*, exercising an office to which the power is incident, exercise it, the courts will not interpose to prevent its collection. If courts of equity were to entertain jurisdiction, and enjoin the collection of taxes, in all cases in which mere informalities and irregularities have occurred in their assessment and levy, it would lead to great delay in their collection, and tend seriously to embarrass every department of the government, whether of state, county, town, or city, and would render the operation of the school system very precarious. While, if the party conceiving himself aggrieved, is left to his remedy at law, such inconveniences will not be felt. And even if we had the power to assume jurisdiction to grant relief, when we see that its exercise would probably lead to such embarrassment in the finances of these various departments of our municipal polity, we should hesitate long before assuming the exercise of such a power. But we conceive that a court of equity is vested with no such authority.

The decree of the court below is affirmed.

*Decree affirmed.*