JOHNSTON, Appellant, vs. THE CITY OF OSHKOSH, Respondent.

*February 25 — March 16, 1886.*

TAXATION. *(1) Domicile: Evidence: Court and jury. (2) Intentional omission of property from assessment roll: Mistake of law. (3) Reassessment in action to recover money paid for taxes.*

1.  Upon the evidence in this case (stated in the opinion) it is *held* that the question whether the plaintiff had acquired a residence outside of the state before his property was assessed for taxation, was properly submitted to the jury.
2.  The omission of taxable property from the assessment roll by the assessors, in good faith, and because they believed the legislature had enacted a law exempting such property, when it had not, invalidates the taxes assessed upon such roll.
3.  If, upon the trial of an action to recover money paid for taxes, it appears that the assessment upon which the taxes were paid is void, the court, before entering judgment, should continue the action for a sufficient time to permit a reassessment. Sec. 1164*a*, R. S., as amended by secs. 2, 3, ch. 355, Laws of 1879, and ch. 132, Laws of 1881.

APPEAL from the Circuit Court for *Winnebago* County.

The plaintiff brought this action to recover $995.84, being the amount of a tax on personal property assessed against him by the defendant city in the year 1883, and paid by him under protest. He claims that the tax is invalid because (1) on May 1, 1883, he was not a resident of that city, but was then a resident of the city of Topeka, in the state of Kansas; and (2) various errors, irregularities, and omissions, specified in the complaint, intervened in the assessment and levy of the tax, which render it invalid. But one of these, to wit, the intentional omission of taxable property from the assessment roll of 1883, is considered by the court.

A special verdict was returned by the jury, the material portions of which are as follows: "(1) Was the plaintiff, on or about the 10th of April, A. D. 1883, a resident of the

city of Oshkosh, and had he been a resident thereof several years previous thereto? Yes. (2) On the 1st day of May, 1883, had the plaintiff acquired a residence in Topeka, Kansas? No. . . . (5) Was the real property known as 'Turner Hall,' viz., lot 1, in block 2, in Merritt's addition, in the Fourth ward of the city of Oshkosh, in the year 1883, when the assessment was made for that year, generally used for other than educational purposes? Yes. (6) Did the assessors, when making the assessment in question, know that said real property known as 'Turner Hall' was not used exclusively for educational purposes? Yes. (7) Did the assessors, when making the assessment in question, intentionally omit to assess the said real property known as 'Turner Hall'? Yes. (8) Did the assessors mark the Turner Hall property exempt and leave it out of the assessment roll, in good faith, and through an error of judgment, believing it exempt by law? Yes."

Motions by the plaintiff for judgment on the special verdict and for a new trial were denied. Judgment was thereupon entered for the defendant, from which the plaintiff appeals.

For the appellant there were briefs by *Jackson & Thompson*, and oral argument by *Mr. Jackson*.

*Charles W. Felker*, of counsel, for the respondent, to the point that the error of judgment on the part of the assessors did not render the tax invalid, cited *Weeks v. Milwaukee*, 10 Wis. 242; *Hersey v. Supervisors*, 16 id. 171; Cooley on Taxation, 155, 156; *Watson v. Princeton*, 4 Met. 599–601; *Williams v. School District*, 21 Pick. 75–81; *People v. McCreery*, 34 Cal. 433.

LYON, J. 1. The finding that the plaintiff was a resident of the defendant city on April 10, 1883, and had been a resident thereof for several years, is unchallenged. But it is claimed that the finding that the plaintiff had not acquired

a residence in Topeka on May 1, 1883, is directly against all the evidence on that subject. The plaintiff testified as follows: "I reside in Topeka, Kansas. I took up my residence in Topeka, Kansas, permanently about the 10th or 11th of April, 1883. I took up my residence in Topeka, Kansas, on the 10th or 11th of April, 1883, with intent of going there to live,— doing business there. I never had any further intention of removing from that place to any other place. My purpose and intention from that time to now has been to make that my home. I have made that my home." The foregoing seems to be all the testimony given by the plaintiff, or in his behalf, on the subject of his residence on May 1, 1883. It was proved by the defendant that the plaintiff returned to Oshkosh, July 20, 1883, and remained there at least until October 2 of the same year, boarding in the same hotel in which he boarded before he went to Kansas. There is no further testimony of his whereabouts intermediate the date last mentioned and the trial, which was had at the December term, 1884.

It will be observed that the plaintiff fails to state or prove what he did to obtain a residence in Topeka. He does not state that he removed his family or any of his effects to that city, or that he engaged in any business there. Neither does it appear that he disposed of his property in Oshkosh, or made any changes in his business affairs with reference to his removal therefrom. Indeed, it only appears by inference that he was ever in Topeka in his life. If we knew what are the grounds for his statements that he took up his residence there,— that he made it his home there,— we might find that his definition of residence and home does not necessarily include personal presence at the designated place, but requires only the intention to reside there. He fails to tell us what he means by the term "residence," or what facts and circumstances he regards essential to constitute a residence or home in a specified place. He says he

took up his residence in Topeka with the intention "of going there to live." This seems to imply a claim of residence there before he personally went there. Perhaps, however, he does not mean to be so understood. Were the plaintiff prosecuted for perjury, in that he falsely testified on the trial of this action that he was in Topeka in 1883, we apprehend the prosecution would have some difficulty in making proof by this record that he directly gave any such testimony. The plaintiff testified that, with the exception of about two years,— 1873 and 1874, — he resided in Oshkosh continually from 1853 to April, 1883, and that he had a family. He fails to state why he returned to that city in July, 1883, or when he again left it, if at all. In short, the testimony tending to show that he had acquired a residence in Topeka on or before May 1, 1883, is vague and unsatisfactory, and, with the other testimony referred to, leaves the mind in serious doubt whether he was at that date a resident of Topeka. Because of such doubt we think the question of residence was properly submitted to the jury, and their determination of it cannot properly be disturbed.

It thus becomes a verity in this case that the plaintiff was not, on May 1, 1883, a resident of Topeka. Hence, for the purposes of taxation, he remained a resident of Oshkosh at that date, and his personal property was then subject to be assessed in that city for taxation. *Kellogg v. Sup'rs Winnebago Co.* 42 Wis. 97; R. S. sec. 1033.

Upon this branch of the case several exceptions were taken to the instructions given the jury, to the refusal of the court to give certain proposed instructions, to the form of the questions submitted, and to the refusal of the court to submit certain proposed questions to the jury. It is unnecessary to discuss these exceptions in detail. Suffice it to say, we think the judge gave the law of the case to the jury correctly and fully, and that the questions submitted were

properly framed and sufficient. None of these exceptions are well taken.

2. Several errors and omissions in the assessment of 1883, which it is claimed render the taxes levied in Oshkosh for that year invalid, are alleged in the complaint. A large amount of testimony was given bearing upon these allegations. Having reached the conclusion (as will presently appear) that one of the objections to the validity of such tax levy is well taken, we are relieved from the necessity of determining the other objections thereto, or the exceptions taken during the trial which relate to such other objections.

The special verdict (as well as the undisputed evidence) is that a certain specified lot in the defendant city, on which stood a building known as "Turner Hall," was intentionally omitted by the city assessors from the assessment roll of 1883. This building was used for purposes which, under the general laws of the state, subjected it to taxation, and the assessors knew that fact. They omitted it because they had seen a statement in a local newspaper that the legislature of 1883 had enacted a law exempting the property from taxation. A practicing attorney of Oshkosh had also told them the same thing. They believed those statements. These facts are the grounds of the finding that the property was omitted from the assessment roll by the assessors "in good faith, and through an error of judgment, believing it exempt by law."

It was held in *Weeks v. Milwaukee*, 10 Wis. 242, that omissions of taxable property from the assessment roll, arising from mistakes of fact, erroneous computations, or errors of judgment on the part of the assessing officers, do not necessarily vitiate the whole tax; but that intentional disregard of the taxing laws, which imposes illegal taxes on those assessed, does vitiate it. In that case the common council of Milwaukee had passed an ordinance, without any authority to do so, exempting the Newhall House

property in that city from taxation, and that property was intentionally omitted by the assessors from the assessment roll. Under the rule above stated, the whole general tax based upon such assessment roll was held void because of such omission.

The same omission was the basis of the case of *Hersey v. Sup'rs Milwaukee Co.* 16 Wis. 185, but it was sought to take that case out of the rule of *Weeks v. Milwaukee*, by averring in the answer that the common council passed the ordinance of exemption in good faith, honestly believing that they had power to do so; that such belief was founded upon the advice of counsel reputed to be learned in the law, and their own examination of the city charter; that a large number of wealthy and prominent citizens and taxpayers petitioned for the enactment of the ordinance; and that, if the council and its members erred in passing the ordinance, "it was an error of judgment in reference to their powers under the law committed while they were endeavoring in good faith to discharge their duty according to law and the best interests of said city;" and, further, that the error of the assessors in regarding the ordinance as valid, and omitting the property from the assessment roll, "was an honest error of judgment as to their powers and duties under the law, and was committed while said assessors were endeavoring in good faith to perform their duties according to law, as they understood those duties, in the honest exercise of their best judgment in reference thereto, and with the purpose and intent to fulfil their duties in all respects."

It was held that the above averments in the answer did not take the case out of the rule of *Weeks v. Milwaukee*. That rule, and its application to cases like that of *Hersey v. Sup'rs Milwaukee Co.* have never been shaken by any subsequent adjudications of this court.

We are unable to perceive any distinction in principle be-

tween this case and that of *Hersey v. Sup'rs Milwaukee Co.* In both cases the omission of taxable property from the respective assessment rolls was intentional on the part of the assessors, who knew that under the general statutes of the state the omitted property was taxable. The respective assessors in both cases honestly believed that such property had been exempted from taxation by competent authority, and in both cases such belief was unfounded. In one case the assessors honestly believed that the legislature had exempted the property, when it had not. In the other, the assessors honestly believed that the legislature had authorized the common council to exempt the property when it had not. We must hold, therefore, that the omission from the assessment roll of 1883 of the Turner Hall property, under the circumstances disclosed by the special verdict and the uncontroverted evidence, invalidates the taxes assessed on that roll against the plaintiff, and hence that it was error to give judgment for the defendant.

3. It does not necessarily follow, however, that the plaintiff is entitled to immediate judgment on the verdict. Sec. 1164a, R. S., as amended by secs. 2, 3, ch. 255, Laws of 1879, and ch. 132, Laws of 1881, provides that in an action for the recovery of money paid as and for taxes levied either upon real or personal property, or both, if it appears on the trial that the assessment upon which the taxes were paid is void, the court, before entering judgment, shall continue the action for a sufficient time to permit a reassessment under the provisions of law. This is just the case mentioned in the statute. Sec. 1210b, R. S., as amended (see sec. 5, ch. 255, Laws of 1879), is referred to as prescribing the mode of making such reassessment; and the judgment to be rendered, after a valid reassessment has been made, is specified in the statute.

*Ruggles v. Fond du Lac*, 53 Wis. 436, was an action very similar to this. It is said in the opinion that, although ir-

regularities may have intervened in the assessment of the tax, going to the groundwork thereof, and affecting all the property in the ward or city, it would not result in a reassessment. The case came here on demurrer to the complaint, and the remark did not in any manner affect the decision. It was not made with reference to sec. 1164$a$, R. S., as amended by the subsequent acts, and that section was not there considered by the court. Nothing there said can be properly regarded as authority against a reassessment of the void tax in a case like this.

It was said in *Kingsley v. Sup'rs Marathon Co.* 49 Wis. 649, that, after finding the facts which bring the case within the statute requiring a reassessment, the court has no jurisdiction to render final judgment until a reassessment shall be made. *Single v. Stettin*, 49 Wis. 645, is there referred to as so holding. But in *Monroe v. Fort Howard*, 50 Wis. 228, a majority of the court were of the opinion, on further consideration, that the rendering of judgment in such a case, before reassessment, although error, was within the jurisdiction of the court. The court has steadily held, however, that the statute is mandatory, and that in a case within its provisions the court must await a reassessment before it proceeds to judgment, even though no motion therefor is made. See *Clarke v. Lincoln Co.* 54 Wis. 580.

In this case the plaintiff did not move for a continuance until a reassessment of his taxes could be had. Neither has either party done anything to waive the right thereto. Indeed, we do not now perceive how such right can be waived unless by express stipulation to that effect.

The judgment of the circuit court must be reversed, and the cause will be remanded for further proceedings as herein indicated.

*By the Court.*— It is so ordered.