THE CITY OF TAMPA, A MUNICIPAL CORPORATION, ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF FLORIDA, PLAINTIFF IN ERROR, VS. ISADORE KAUNITZ, DEFENDANT IN ERROR.

1. An assessment for taxation must be made by the officer, either *de jure* or *de facto*, authorized by law to make it, or it will be invalid.

2. An assessor of taxes may avail himself of the services of other persons in performing duties of a clerical or ministerial nature, requiring no exercise of official discretion and involving no substantial rights of the persons against whom assessments are made, and if such work is done under the supervision of the assessor, or he ratifies or adopts it, the assessment will be valid; but if the assessor permits other persons to perform all duties relating to the assessment for an entire tax year, while he abstains from any duty connected therewith, such assessment will be a nullity.

3. One employed by a city to assist its assessor of taxes in the performance of his duties, who does not claim to be and is not recognized as an officer of the city, but merely an employee to assist the assessor, is not an officer *de facto* of said city whose acts as such, in making an assessment of taxes in which the rightful assessor does not participate, will be binding.

4. Without valid legislative authority, no city or town has power to exempt taxable property within its limits from municipal taxation, nor can it bind itself by contract either to forbear to impose taxes on particular property, or to impose them only under given limitations, or on certain given conditions.

5. If tax officers intentionally omit taxable property from the assessment rolls for an improper purpose, thereby unequally and inequitably adjusting the burdens of taxation, the entire assessment will be illegal and void. If, however, the omission arises in consequence of a *bona fide* belief on their part that the omitted property is exempt from taxation, or results from inadvertence or negligence, without any intent to impose additional or unequal burdens on other taxpayers, the assessment will be valid.

6. No relief can be given in the proceedings authorized by Section 1542, Revised Statutes, unless the *assessment* be illegal or "not lawfully made." If the assessment was lawfully made, but relief is demanded because of matters occurring after the making of the assessment, rendering it inequitable or illegal to collect taxes legally assessed, the remedy is by other proceedings at law or in equity, and not under the provisions of this section.

7. Where a city assessor places upon the city roll taxable property, and properly values and extends the taxes due upon the same in accordance with the law, such assessment is valid though the assessor knows that the city does not intend to collect same, and his motive in assessing it is to deceive the public into the belief that such property is being taxed, and to make the entire assessment apparently fair and regular on its face, and such conduct does not render illegal other assessments upon the same roll, so as to authorize the application of the remedy afforded by Section 1542, Revised Statutes.

8. Where a demurrer is overruled to a petition filed against a city under Section 1542, Revised Statutes, and the city declines to plead further, the court should require proof of the allegations of the petition before entering judgment declaring the assessment not lawfully made.

Writ of Error to the Circuit Court for Hillsborough county.

## STATEMENT.

Defendant in error filed his petition in the Circuit Court of Hillsborough county on April 23, 1897, alleging that he was the owner of certain real and per-

sonal property in the city of Tampa, assessed upon the assessment rolls of said city for the year 1896, the real estate at a valuation of $4,100, and the personal property at a valuation of $3,000, upon which the city had made a levy for city taxes for said year of twenty-five mills, the total amount of taxes levied thereon for said year, as shown by the tax rolls of said city, being $177.50. It was further alleged that under the laws of this State the mayor of said city was required, with the consent of the city council, to appoint an auditor for said city, who was also required to act as assessor for said city; that under this power one M. B. Knight was duly appointed auditor of said city, and duly qualified as such, and under the city's charter became the assessor of taxes thereof, and was at the time of filing the petition the only legally qualified assessor of taxes therefor; that the assessment of the taxable property of Tampa was not made by said Knight; that he did not personally visit the various properties of the city, as required by law, and assess same at their actual cash value, nor did he perform any duties whatever connected with the assessment of taxes for said city during the year 1896; but that by a certain resolution of the city council of Tampa on March 27, 1896, the council attempted to delegate to the finance committee of the city council authority to employ such assistance to the auditor, as in their judgment was required to properly make the assessment for city taxes for 1896, and by virtue of this resolution the finance committee employed one S. L. Biglow to make the assessment of property for city taxes for 1896; that said assessment was made by Biglow exclusively, and that the legal assessor of said city had nothing whatever to do with the assessment aforesaid; that not

being a legal officer of the city, Biglow placed arbitrary valuations on the real and personal property in said city, and by reason of certain pretended and invalid resolutions and contracts of the city of Tampa failed to assess a very large part of the most valuable property situated within its corporate limits, practically exempting same from taxation, thereby exempting same of its due burden of taxes, and increasing the burden of taxes to be paid by petitioner and other property holders in said city, over and above their equitable proportion. It was further alleged that petitioner's assessment was unconstitutional, null and void by reason of the fact that a large amount of the most valuable property in the city was by reason of certain pretended and invalid ordinances and resolutions of the city of Tampa, exempt from taxation; that about April 23, 1888, the city council of Tampa passed ordinance No. 25, by which, in consideration of J. A. Wood and his associates acquiring lands within the corporate limits of said city, and commencing the erection of suitable buildings thereon for hotel purposes, and maintaining same, the hotel site, buildings and appurtenances to cost not less than $200,000, the city agreed that the sum of $200 annually should be received by the city council from Wood, his associates and assigns in lieu and full of all taxes whatsoever, whether *ad valorem* or for licenses on said property or in the conduct thereof, and on April 26, 1888, the city entered into a contract with Wood and his associates in accordance with the terms of the ordinance; that Wood and his associates organized the Tampa Bay Hotel Co., purchased seventeen acres of land within the corporate limits of Tampa, and erected thereon a hotel, which with its equipments cost, as

petitioner was informed and believed, the sum of $1,500,000, and although the property was worth at least that sum, yet, as petitioner was informed and believed, the same was assessed on the city assessment rolls at $542,300; that as petitioner was informed and believed the assessment of this property was placed on the assessment rolls of said city for the purpose of pretending and apparently making the city assessment valid on its face; that it was never placed there for the purpose of collecting the taxes due on said property, but for the purpose of deceiving the public; that the taxes on said property, except the sum of $200, will never be collected; that it has been customary in said city for several years to place said property on the assessment roll at about one-fourth or one-fifth its actual value, and before property in said city is advertised for taxes, the same is taken off the assessment rolls and the sum of $200 received from the company in lieu of all city taxes; that although at the rate of taxes at which said property was then assessed on the assessment roll, the taxes on same for 1896 would amount to $13,557.50, yet the collector of said city had failed to collect that sum, and had made an endorsement opposite the assessment of the company's property that he had accepted the sum of $200 from the Tampa Bay Hotel Co. in lieu of all taxes, under instructions from the finance committee of said city and by virtue of the contract and ordinance before referred to; that under the Constitution of the State of Florida taxation is required to be equal and uniform, and that no property is exempt from taxation except it be used for municipal, educational, literary, scientific, religious, or charitable purposes, and that no part of the Tampa

Bay Hotel Co. property was used for any of said pur-
poses. It was further alleged that about June 7, 1883,
the old town of Tampa, now known as the city of
Tampa, passed ordinance No. 32, granting and con-
veying to the South Florida Railroad Company the
exclusive right to use and build a certain railroad,
which the company at that time intended to and did
subsequently build through certain streets in said city,
by which the town exempted the road, rails, equip-
ment and franchises forever from city taxation of
every kind; that the road was built and had been
operated through the streets of Tampa for years, and
its roads, rails and equipments in this city were then
of the value of $30,000 or $40,000; that said railroad
was now known as the South Florida Division of the
Savannah, Florida & Western Railway Company;
that petitioner was informed and believed that the
State Comptroller had placed a valuation on said
property of $30,283.65, and forwarded same to the
city tax assessor, and in order to make the assessment
apparently valid on its face the city tax assessor had
placed same on the assessment roll for 1896; but peti-
tioner was informed and believed that although said
property had been likewise assessed for several years
past, yet no taxes had ever been collected on the
property so assessed, but that under said ordinance
No. 32 the tax collector had failed to collect the taxes
assessed against the same; that said property was not
exempt from taxation under the Constitution and laws
of Florida, as it was not used for either of the pur-
poses in which property was allowed to be exempt
under said Constitution and laws. It was further al-
leged that the Florida Central & Peninsular Railroad
Company operated a line of railway coming into the

city of Tampa, making its terminal point on the Hillsborough river; that although the property of said company was of the value of at least $20,000, and although, as petitioner was informed and believed, the State Comptroller had forwarded to the assessor of city taxes a valuation of same, yet said property had not been placed upon the assessment roll of said city for the year 1896; that petitioner was informed and believed that there was other valuable property of the value of at least $40,000 which was entirely omitted from the assessment roll of said city for the year 1896. It was further alleged that on or about September 29, 1887, the city council of Tampa passed ordinance No. 7, by which it practically exempted certain property of the Tampa Water Works Co. from taxation for a period of ten years; that the value of the property of this company was at least the sum of $300,000; that none of the property was used for any of the purposes for which it was allowable to said city to exempt same from taxation. It was further charged that by reason of these alleged unjust, unconstitutional and unlawful exemptions from taxation, the city was deprived of a very large part of its revenue, amounting to about $51,000 taxes per annum; that if said property was properly assessed it would greatly lessen the burden of petitioner's taxes; and petitioner claimed that by reason of the alleged irregularities the petitioner's assessment for 1896 was unconstitutional, void and illegal. The petitioner prayed that the court declare his assessment unconstitutional, illegal and void, and for such other relief as the nature of the case might require.

To this petition is appended an affidavit of petitioner to the effect that he has read the same; that it

was true of his own knowledge, except the matters alleged upon information and belief, and as to them he believed them to be true. Several exhibits were also attached. The first, exhibit A, dated March 27, 1896, after reciting that the new city charter consolidated the two offices of auditor and assessor, and that the many duties of the auditor's office prevented the incumbent from performing all the necessary duties of assessor without assistance, resolved that the finance committee of the city council be and they were thereby authorized and instructed to employ whatever assistance to the auditor that in their judgment might be required to properly make the assessment for city taxes for the year 1896. The resolution also provided for payment of the persons so employed. The second, exhibit B, approved April 24, 1888, was entitled an ordinance authorizing and directing the mayor and president of the city council of Tampa to execute an instrument of writing guaranteeing to J. A. Wood and his associates that the payment of the sum of $200 annually to the city of Tampa on a hotel to be erected by them would be received in lieu of all city taxes, and after reciting that Wood had represented that he and his associates were desirous of acquiring lands within the corporate limits of Tampa and erecting thereon buildings for hotel purposes, and of conducting therein the general business of keeping hotel, it was ordained by the city council of Tampa, by section 1, that the mayor and president of the council be and they were thereby authorized and directed, in the name and on behalf of the city of Tampa, to execute to J. A. Wood and associates an instrument in the form therein set out; and, by section 21, that all conflicting ordinances and parts thereof be repealed. A part of

this exhibit B consists of the instrument purporting
to have been executed, in compliance with the provis-
ions of the foregoing ordinance, by the mayor, presi-
dent of the council and city clerk, on behalf of the
city of Tampa, dated April 26, 1888, by which, after
reciting that in consideration that J. A. Wood and his
associates should acquire land within the corporate
limits of said city, and within a reasonable length of
time commence the erection of suitable buildings
thereon for hotel purposes, including all necessary
waterworks and sewers, and should maintain and con-
duct in said buildings the general business of hotel
keeping, the hotel site, buildings and appurtenances
to cost not less than $200,000, the city of Tampa did
thereby covenant and agree to and with Wood, his as-
sociates and assigns, that the sum of $200 annually
should be received by said city from said Wood and
associates and assigns in lieu and in full of all city
taxes whatsoever, whether *ad valorem* or of licenses
on said hotel property or in the conduct thereof.
Exhibit C purported to be an ordinance approved
June 7, 1883, entitled ordinance No. 32, granting
certain rights and privileges to the South Florida
Railroad Company, and it was thereby ordained by
the town council of Tampa, by section 1, that said
town thereby granted to the South Florida Railroad
Company the right to use and lay one or more lines
of railroad track over and upon Polk, Zack, Jackson,
Cass, Whiting and Walter streets, and to run en-
gines and cars upon said railroad; by section 2, that
the mayor, president of the board of aldermen and
clerk of the town forthwith execute and deliver to
said company a deed or other written conveyance un-
der the town seal, giving, granting and conveying un-

to said company the exclusive right to use said railroad and track, and that the road, rails, equipments and franchises should always be exempt from taxation of every kind by the town of Tampa; and by section 3, that the consideration for which these franchises were granted should be $5, the receipt whereof was thereby acknowledged. Sections 4 and 5 of this ordinance relate to matters having no bearing upon the questions involved in this case. None of these exhibits were certified to be true copies of the originals.

On April 30, 1897, the city of Tampa demurred to this petition upon the following grounds: 1st. The assessor is not required to personally inspect and value every parcel of real property in the city. 2d. The petition failed to allege that the assessor did not place valuations on said property. 3d. The assessor had a right to employ necessary clerical assistance. 4th. The resolution attached as an exhibit failed to show that Biglow was employed or empowered to place valuations on the property in the assessment roll. 5th. Said resolution shows that Biglow was employed to do clerical work only. 6th. Petitioner can not in this proceeding attack an assessment because it is alleged to be either unjust or unequal in valuation. 7th. The omissions from the assessment roll were not alleged to be fraudulent. 8th. The allegations of the petition show that the property of the Tampa Bay Hotel Co. and the Savannah, Florida & Western Ry. Co. were duly and legally assessed upon said assessment roll. 9th. The exemptions in favor of the Tampa Bay Hotel Co. and the Savannah, Florida & Western Ry. Co. were upon good consideration and valid. 10th. The petition failed to show the consideration upon which an exemption from taxation was

granted to the Florida Central & Peninsular Railroad Co., or that such consideration was illegal. 11th. Only errors of law, by the assessor, can be reached in this proceeding. 12th. The allegations as to exemption of other properties were insufficient and too general upon which to ask relief. 13th. The assessment of petitioner's personal property was legal. On April 30, 1897, the court below overruled this demurrer, and defendant refusing to answer further, but standing upon his demurrer, the court proceeded to enter judgment upon the demurrer, and thereby adjudged that the assessment of petitioner's property by the city of Tampa was unlawful. From this judgment the city sued out the present writ of error to our June term, 1897; and, upon motion, the case was advanced on our docket.

*William Hunter*, for Plaintiff in Error.

*F. M. Simonton*, for Defendant in Error.

CARTER, J.:

The assignments of error complain, first, that the court erred in overruling the demurrer to the petition; second, that the court erred in declaring the assessment of petitioner's property unlawfully made.

I. We think a proper consideration of all substantial questions suggested by the demurrer to the petition can be had by ascertaining (A) whether the assessment for taxes of 1896 was void because made by Biglow, instead of the auditor of the city of Tampa; (B) whether the city of Tampa had power, by contract or otherwise, to exempt from taxation the various properties alleged in the petition; (C) whether the

exemptions of taxable property by the city, the omissions of taxable property from its tax rolls, and the placing thereon of property legally taxable, in order to make the rolls apparently valid, but with no intention on the part of the city of collecting the taxes due thereon, will justify a court in setting aside the whole assessment in a proceeding by petition under our statute, section 1542, Revised Statutes.

A. We think the first question must be answered affirmatively. Section 4 Chapter 4496, approved May 29, 1895, being the present charter of the city of Tampa, provides that "the government of said city shall be carried on by the following officers: A mayor, eleven councilmen, a marshal, a clerk, a treasurer, a municipal judge, a tax collector, and auditor who shall also be assessor of taxes, a chief of the fire department, and such other officers as may be created by ordinance of the city not inconsistent herewith, and all of said officers shall be qualified electors of said city of Tampa, and shall perform such duties and receive such compensation as may be prescribed by ordinances of the city of Tampa, not inconsistent with the provisions of this charter." By section 10 it is provided that the mayor shall, by and with the consent of the city council, appoint some suitable person to be called the auditor of said city, who shall also act as assessor of said city, who shall give such bond as the council may direct and whose duty and compensation shall be fixed by ordinances, except as herein provided. Section 31 makes it the duty of the tax assessor of the city, between April 1st and July 1st of each year, to ascertain by diligent inquiry all taxable personal property and all taxable real estate in the city and the names of the persons owning same on April 1st in each year, and to

make an assessment of all taxable property. It requires him to visit and inspect all real estate and affix a valuation thereon, and he is to require the owners of personal property to return and value same under oath, which he is authorized to administer, and any person refusing to 'make such oath is not permitted afterward to reduce the valuation of such personal property for that year. By section 34 the assessor is required to value all personal property not returned under oath according to his best judgment and information. Other provisions of the charter require the assessor to make out assessment rolls in the manner specified therein, to meet with the city board of equalization on the first Monday in July of each year, for the purpose of reviewing the assessment rolls, to calculate and carry out the several amounts of taxes, after the amount to be raised has been determined, and after completing the rolls to append to them an affidavit as to the correctness of the rolls and of the valuations of property made by him, and to issue and attach to the original roll a warrant in the form prescribed by section 38, commanding the tax collector to collect the taxes therein by sale of the assessed property. The charter of the city having expressly committed these duties relating to the assessment of taxes to the auditor, the city had no power to transfer them to any other person. City of Tampa vs. Salomonson, 35 Fla. 446, 17 South. Rep. 581. We do not understand that the resolution of the city council, referred to in the petition, undertook to transfer the duties of tax assessor from the auditor to the persons authorized to be employed by the finance committee. The persons so employed were merely assistants to the auditor in making the assessment. No new office was attempted

to be created by this resolution, nor did the resolution attempt to authorize the employee to make the assessment exclusively of the auditor. Biglow, the employee under this resolution, did not pretend to be the rightful auditor or assessor of the city. He did not attempt to oust the legal incumbent of these offices, nor did he assume to be the rightful occupant thereof. Biglow was not an officer, nor did he pretend to be an officer of the city. He was a mere employee of the council, having and claiming no other or higher rights or duties than those of an assistant to the auditor in the matter of making city assessments of taxes. Biglow was not, therefore, an officer *de facto* whose acts as such would be valid as to third persons, as was the case in the Town of Kissimmee City vs. Cannon, 26 Fla. 3, 7 South. Rep. 523. 1 Blackwell on Tax Titles, sec. 170; Cooley on Taxation, p. 251; Mechem on Public Officers, secs. 319, 321; Black on Tax Titles, sec. 93; Birch vs. Fisher, 13 Serg. & R. 208; Hawkins vs. The Intendent, etc., of Jonesboro, 63 Ga. 527; Paldi vs. Paldi, 84 Mich. 346, 47 N. W. Rep. 510; Farrington vs. New England Investment Co., 1 M. Dak. 102, 45 N. W. Rep. 191; Bailey vs. Fisher, 38 Iowa, 229; Munson vs. Minor, 22 Ill. 594. We think it is absolutely essential to the validity of a tax levy, that the assessment be made by the officer authorized by law to make it. The person making the assessment must be that officer, either *de jure* or *de facto*. We do not mean to intimate that the officer must personally perform every act connected with the assessment and the making of the tax roll. Many of these acts are of a clerical nature, involving no exercise of discretion, and having no relation to any right of the tax payer. A very large portion of these duties consists in transcrib-

ing upon the rolls the various assessments, and in calculating the amounts of taxes levied thereon. The assessor may call to his assistance the services of other persons, whether officers or not, in the performance of all clerical or ministerial duties, and the assessment will not be invalid for that reason if the work of others is done under his supervision, or is ratified or adopted by him. But if the assessor, either from neglect or because of other pressing duties devolving upon him, permits his assistants to perform all the duties relating to the assessment for a whole tax year, while he abstains from any duty connected therewith, an assessment so made will be utterly void, and it is the duty of the courts to so declare it. The reasons are succinctly stated by Mr. Blackwell (Tax Titles, vol. 1, sec. 168) as follows: "The statute being the authority, and the officer the agent to execute it, and no one being empowered to do the act except the person specially designated in the law for that purpose, it follows that a stranger to the power can not execute it. The power is conferred upon the officer, not the man. It is an official, not a personal trust. It does not rest upon confidence, but upon official responsibility. Hence the only security of the proprietor of the estate is the official character of the person to whom the power is committed. This security mainly depends upon the responsibility of the officer to the government, the sanctity of his oath of office, and his liability to those whose rights are violated by his wrongful acts. * * * The citizen is entitled to all the protection against fraud, rapacity, and abuse of authority, in the sale of his property, which official responsibility can secure." The petition distinctly avers that the auditor or assessor performed no "duties whatever con-

nected with the assessment of taxes for the city of Tampa during the year 1896;" that "the said assessment was made by the said Biglow exclusively and that the legal assessor of the city of Tampa had nothing whatever to do with the assessment aforesaid." If these allegations are true, the assessment of petitioner's personal as well as real property was void. Welty on Assessments, sec. 10; Cooley on Taxation, p: 248; Black on Tax Titles, sec. 92; Stokes vs. State, 24 Miss. 621; Munson vs. Minor, 22 Ill. 594; Ferris vs. Coover, 10 Cal. 589; People vs. Hastings, 29 Cal. 449; People vs. White, 47 Cal. 616; Farrington vs. New England Investment Co., 1 N. Dak. 102, 45. N. W. Rep. 191; Snell vs. City of Fort Dodge, 45 Iowa, 564. The allegations of the petition being sufficient to show that the assessment was void because made by an unauthorized person, we would ordinarily affirm the judgment without expressing an opinion upon the two other propositions stated in the beginning of this paragraph, but as the judgment must be reversed upon another ground, and these questions will arise in the further progress of the case, we will proceed to consider them here.

B. Did the city of Tampa have power by contract or otherwise to exempt from taxation the properties of the South Florida Division of the Savannah, Florida & Western Railway Co., and the Tampa Water Works Co., and to perpetually bind itself to accept from the Tampa Bay Hotel Co. $200 per annum in full for all city taxes, without regard to the value of its property or the rate of taxation levied thereon? The plaintiff in error cites us to no authorities on this point. He plants himself upon the proposition that the exemptions were granted for a consideration, and that consequently they amounted to a contract with

the city. But where does the city derive its authority to make such a contract? We have not been cited to any statute of this State authorizing the city to exempt this species of property from taxation, nor to make a contract so to do. Without valid legislative authority, no city or town has power to bind itself by contract, either to forbear to impose taxes on particular property, or to impose them only under given limitations, or on certain given conditions. Black on Tax Titles, sec. 63; Cooley on Taxation, p. 200; 1 Blackwell on Tax Titles, secs. 110, 117.

C. Some courts have held that the intentional omission of taxable property from the assessment roll, under the *bona fide* belief of the assessor that such property was exempt from taxation, the effect of which omission was to increase the amount of taxes to be paid by other tax payers, would render the entire assessment void. Weeks vs. City of Milwaukee, 10 Wis. 242; Johnson vs. City of Oshkosh, 65 Wis. 473, 27 N. W. Rep. 320; Altgelt vs. City of San Antonio, 81 Tex. 436, 17 S. W. Rep. 75, 13 L. R. A. 383. Other courts hold that such omissions, even if made wilfully, or as the result of carelessness, can not be urged to defeat taxes otherwise properly assessed; that in such cases the officers may make themselves amenable to the law for misconduct in office, but such conduct can not "stop the wheels of government" by defeating the collection of taxes. Dunham vs. City of Chicago, 55 Ill, 357; Van Deventer vs. Long Island City, 139 N. Y. 133, 34 N. E. Rep. 774. We think tax officers like all others are required to exercise good faith in performing their official duties. They should not use their official position, or official discretion, as a cover for fraudulent conduct in unequally and in-

equitably adjusting the burdens of taxation. For it is a salutary principle of law, which runs through all its branches, that fraud vitiates and annuls everything which it touches. If, therefore, tax officers intentionally commit an illegal act with a fraudulent purpose in view, as where taxable property is intentionally omitted for an improper purpose, we have no doubt that the entire assessment is illegal and void. If, however, the omission to assess taxable property arises in consequence of a *bona fide* belief on the part of the taxing officers that the omitted property is exempt from taxation, or results from inadvertence or negligence, without any intent on their part to impose additional or unequal burdens upon other tax payers, the assessment will not be held to be void. Farrington vs. New England Investment Co., 1 N. Dak. 102, 45 N. W. Rep. 191; McTwiggan vs. Hunter, 19 R. I. ——, 33 Atl. Rep. 5, 29 L. R. A. 526; Keokuk and Hamilton Bridge Co. vs. People, 161 Ill. 514, 44 N. E. Rep. 206; Cooley on Taxation, pp. 214-217; Black on Tax Titles, sec. 217. The petition nowhere alleges that any property was omitted from the city rolls of 1896, in bad faith or from any fraudulent purpose. In fact, the argument of defendant in error in this court is principally directed to property assessed upon the roll, and not to omissions therefrom. It is insisted that the property of the Tampa Bay Hotel Co., and of the South Florida Division of the Savannah, Florida & Western Railway Co., was placed upon the city rolls for an improper purpose, *viz:* to deceive the public, and make the city roll apparently valid, with no intention of collecting the taxes due upon it. It is not denied that this property was regularly and validly assessed, and the taxes due thereon properly extended

against it. It is not claimed that this conduct had any relation to the individual assessment against petitioner, nor that he was personally affected thereby in any other or different manner than all other tax payers whose property was assessed upon the roll for that year. If the petitioner's assessment was illegal on that account, the entire assessment was likewise illegal. However reprehensible in morals the auditor's conduct may have been in assessing the property complained of, with an improper motive, he was, nevertheless, performing his official duty when he assessed it, and as the assessment, had it been made from good motives, would have been valid, because conforming to law, we can not say that it was invalid simply because it was made from bad motives. The law can not descend to an inquiry into the motives of an officer who performs an official act in strict accordance with its command. This being true, we can not hold the assessment "not lawfully made," because the officer rightfully and legally assessed property subject to taxation, even if he assessed it with a fraudulent motive. The fact that the city collector failed to collect taxes legally assessed, or accepted a less sum than actually due in full settlement of taxes legally assessed, can not render other legal assessments amenable to the remedy given by our statute, even though such conduct be authorized by the city council, because such illegal acts do not relate to the making of the assessments, but to the collection thereof. Our statute, as will be seen by reference to its language, given in the next succeeding paragraph, does not undertake to give a remedy co-extensive with the powers of a court of equity to prevent the collection of taxes, but is confied entirely and exclusively to "illegality" of assess-

ments, and authorizes the court to "declare the assessment not lawfully made," "if found to be illegal." All inquiries upon a petition under this statute must be confined to illegalities in the assessment, and they can not be directed to other grounds of complaint against the enforcement of taxes as to which the assessment was lawfully made. Shear vs. County Commissioners of Columbia County, 14 Fla. 146.

II. Although the demurrer to the petition was properly overruled, for the reasons given in the first part of this opinion, we think the court erred in rendering final judgment upon the demurrer, without requiring proof of the allegations of the petition. It is true that the proper practice upon overruling a demurrer in ordinary cases is to enter final judgment upon the demurrer, where the party demurring declines to plead further. But this proceeding by petition is special and summary, and it is authorized as well as regulated by the provisions of section 1542, Rev. Stat., reading as follows: "In all cases where assessments are made against any person, body politic or corporate, and payment of the same shall be refused upon allegation of the illegality of such assessment, such person, body corporate or politic, may apply to the Judge of the Circuit Court by petition setting forth the alleged illegality, and present the same, together with the evidence to sustain it, and the judge shall decide upon the same, and if found to be illegal shall declare the assessment not lawfully made." It was not the intention of this section to permit a court in this summary manner to relieve a tax payer from his assessments upon allegations merely. It requires the court to act upon proof. To entitle one to the benefit of its provisions he must proceed substansially

in accordance with its terms. No proof was presented to the judge in this case. The alleged ordinances and contracts attached to the petition were not certified; many of the most important allegations in the petition were alleged upon information and belief, and the affidavit attached to the petition as to these matters merely alleged a belief that they were true. This was not the proof contemplated by the statute. It follows from these views that the demurrer was properly overruled, because the assessment was made by an unauthorized person, but the final judgment was erroneous, because entered without proof.

The judgment is reversed for further proceedings consistent with law and this opinion.