CITY OF PENSACOLA, PLAINTIFF IN ERROR, VS. LOUISVILLE AND NASHVILLE RAILROAD COMPANY, DEFENDANT IN ERROR.

CITY OF PENSACOLA, PLAINTIFF IN ERROR, VS. P. & A. R. R. CO., DEFENDANT IN ERROR.

WALTON, PLAINTIFF IN ERROR, VS. WITTICH, DEFENDANT IN ERROR.

1. Neither the Tax Collector of a city nor the Tax Assessor of a county in which said city is situated, is a necessary party to a petition, filed against said city, under section 4, chapter 151, Laws of Florida, by a person owning property therein, the only prayer of the petition being that an assessment of said property by said city for taxation be declared unlawful.

2. Neither section 28, chapter 3,219, nor section 28, chapter 3,413, Laws of Florida, authorize the Board of County Commissioners to raise or lower the valuation of property of a railroad company assessed by the Comptroller of the State under section 46 of each of above acts.

3. Section 46, chapter 3,219, and section 46, chapter 3,413, Laws of of Florida, charge the Comptroller of the State with the duty of assessing the total number of miles and value of any railroad in this State, the line of which runs through two or more counties or through a county and incorporated city or town and apportioning the value of the said road in each county, incorporated city or town, and the proportionate value of the locomotives, engines, passenger, freight, platform, construction and other cars and appurtences, and withdraws from the local assessors of the said towns and cities, through which the said road runs, the power to assess the same under the general power granted to municipal corporations to assess and tax all real and personal property within their limits.

4. All other property of a railroad company within the limits of an incorporated city or town, not required by section 46 of each of said acts, to be assessed by the Comptroller, can be lawfully assessed by the Tax Assessor of said city or town in the manner prescribed in Chapter 3,477, Laws of Florida.

5. On a petition filed, under section 4, chapter 151, to declare an assessment unlawful, it is error to declare the whole assessment to be unlawful, where the illegal items can be separated from the assessment list without impairing or affecting those parts of the same which are legal. Overruling Basnett vs. City of Jacksonville, 19 Fla., 664.

6. The County Commissioners of a county in which is situated an incorporated city or town have no authority under section 2, chapter 3,025, Acts 1877, to enlarge the boundaries of said city or town in the absence of a petition from the corporate authorities requesting an enlargement of the same.

Writ of Error to the Circuit Court for Escambia county.

It was agreed that judgment should be entered in all of the above entitled cases in accordance with the judgment which should be entered in the case of city of Pensacola. vs. L. & N. R. R. Co.

Petition filed under Chapter 151, Laws of Florida, to declare the tax assessment of the City of Pensacola upon property of the Louisville and Nashville Railroad Company within said city unlawful.

The petition sets forth that the said Louisville and Nashville Railroad Company is a corporation chartered and doing business under the laws of the State of Kentucky.

That said petitioner was and is operating a line of railroad in the State of Florida, extending from the City of Pensacola to the boundary line of the State of Alabama, and there connecting with other roads owned and controlled by the petitioner, extending into and through Alabama, Mississippi, Tennessee and divers other States of the United States. That said road in Florida is entirely in the county of Escambia, and embraces, including side tracks and switches, about fifty-one miles.

That petitioner has an office for the transaction of business in the City of Pensacola, in which there is a certain portion of its track, and in which is situated certain real estate belonging to petitioner, and in which there is in use from time to time certain varying portions of the rolling stock which is also used in said county, and to a large extent in the several States into which its system of roads extends.

That the said City of Pensacola has assessed and levied in and for the years 1881 and 1883, certain taxes upon the property of your petitioner, which said taxes and property are shown in Exhibits " A " and " B," hereto attached, and which petitioner prays may be taken as a part of his petition.

Said exhibits are as follows:

"A."

Louisville and Nashville Railroad Company—

To the City of Pensacola, Dr.

For the year 1883.

| | Value. | Taxes. | Amount. |
|---|---|---|---|
| Real estate..................... | 111,000 | 1 per cent. | 1,110.00 |
| Personal property.............. | 52,500 | 1 per cent. | 522.00 |
| | | | 1,635.00 |
| Special tax on bonds ¼ of 1 per cent......................... | | | 817.50 |
| Special tax for fire 1-5 per cent........................... | | | 327.00 |
| 163,500 | | | 2,779.50 |

DESCRIPTION OF REAL ESTATE.

| | | |
|---|---|---|
| Locomotives, engines, passenger, freight, platform, and all other cars.............................. | $80,000 | |
| And four miles of track........................ | 30,000—$111,000 | |
| Depot lot on Government and Tarragona streets.. | | 2,500 |
| Warehouse on Tarragona street extension and wharf........................................ | | 24,000 |
| Warehouse on Muscogee wharf and wharf shop, tools and machinery............................ | | 26,000 |

"B."

Louisville and Nashville Railroad Company—

To the City of Pensacola, Dr.

For the year 1881.

| | Value. | Taxes. | Amount. |
|---|---|---|---|
| Real estate...................... | 6,000 | 1 per cent. | $60,00 |
| Personal property................ | 280,000 | 1 per cent. | 2,800.00 |
| | 286,000 | | $2,860.00 |

DESCRIPTION OF REAL ESTATE.

Lot corner of Tarragona and Government streets.......... $6,000

"Description of other property same as for 1883, as is also the manner of assessment."

That petitioner is advised and believes that under the laws of Florida there existed in the years, A. D. 1881 and 1883, no power in the City of Pensacola to assess and levy any taxes for any purpose upon the road bed, tracks, right of way, or the locomotives, cars, engines or other rolling

stock of petitioner, nor any method of assessing the same.

That petititioner is advised and believes that if any such power existed in said years, that said assessments were under the laws to be based upon a valuation to be furnished to the said City of Pensacola by the Comptroller of the State of Florida, and petitioner avers that said Comptroller, in neither of said years, furnished the said valuation to the said city or to the assessor of the county of Escambia.

That under chapters 3424 and 3477, of the laws of Florida, the valuation upon the assessment books of the county in which an incorporated town or city is situated, is conclusively taken for the purpose of assessment, by the said town or city, of such property as might be within its limits.

Petitioner avers that said City of Pensacola copied exactly from the assessment books of said Escambia county the description and valuation of all the property assessed to petitioner, except the road bed, right of way and track, of which it is arbitrarily assumed four miles to be within the city, and which it assessed at the same valuation per mile as the average valuation per mile of said road upon the assessment books of said county.

That petitioner is advised and believes that if any power existed in said city to assess and levy a tax upon petitioner for the property aforesaid, and if it can be assessed by said city without a previous valuation by the Comptroller of the State of Florida, and a communication from him thereof to the said city, the true and actual value as it appears on the books of assessment of said county of that portion of the said property which lies within said city, must be taken as the valuation of said portion for assessment by said city, and your petitioner avers that it does not appear on the books of said county for said years what was the true and actual value of that portion of the road bed, tracks

and right of way, which lay within said city. And petitioner further avers that the said city, in fixing a valuation upon the said portion of road bed lying within the limits of said city, which is arbitrarily assumed to be four miles, did not attempt to determine the true valuation of said road bed, but valued the same at the same average valuation per mile of the whole of said road lying in Escambia county as furnished by the said 'Comptroller to the assessor of said county, which assessed valuation petitioner avers to be much greater than the actual value per mile of the portion within said city. That in the said assessment by said city, it has assessed to your petitioner the rolling stock, &c., of your petitioner, at a valuation of $80,000, which petitioner avers is the valuation of said rolling stock by the county of Escambia, the same being furnished to the assessor of said county by the Comptroller of said State under the law, and is the whole value of said rolling stock assessable by said county.

And petitioner avers that he is advised and believes that if the said rolling stock is assessable and taxable by said city under the laws, it can assess and tax only that portion of the whole which might be apportioned to it by the said Comptroller, and petitioner avers that the said Comptroller did not in said years 1881 and 1883 furnish to the said city any valuation of the rolling stock, &c., of the petitioner upon which the said city might assess and levy a tax, and petitioner further avers that the rolling stock, &c., of petitioner is assessed and taxed at the domicile of petitioner, to wit, at Louisville, Kentucky, and that said rolling stock was not on the first of March in either of said years, or at any time permanently, in the county of Escambia, or the said city, but only temporarily there, being brought from time to time from other portions of your pe-

32

titioner's roads as hereinbefore set forth and returned as the necessities and conveniences of transportation required, there being at no time any certainty as to the identity or number of cars, locomotives, &c., in said city.

And petitioner further avers that the two wharves and warehouses, to wit, the Tarragona street wharf and warehouse and the wharf known as the Muscogee wharf and the warehouse thereon, which are taxed by said city to your petitioner, are not taxable by said city because said *wharves* are not within the limits of said city, but lie in the waters in front of said city. That it is true that the County Commissioners of said county in which said city lies, by a proceeding taken in the year 1877, attempted to extend the limits of said city, and petitioner avers that without adverting to various irregularities in the action of said Commissioners their act in so extending the limits was without jurisdiction, because the corporate authorities of said city never petitioned the said Commissioners to enlarge the boundaries of said city.

That petitioner refused to pay, &c., and prays that said assessment may be declared to be unlawful.

. The defendant city to this petition filed a plea in abatement upon the ground of non-joinder of parties as defendants, to wit, that one George Reese, Assessor of Taxes of the county of Escambia, and custodian and agent of the State of Florida of the assessment roll of all property in said county, was not made a party defendant to said petition.

2d. That J. B. Walton, Collector of Taxes of said city of Pensacola, was not joined in said suit as a defendant.

The defendant also filed a plea of limitation setting forth that petitioner never availed itself of the right of correction and equalization of assessment within the time and manner and form as required by law within the year in which the

assessment was made and was debarred thereby from contesting the legality of such assessment.

The defendant city also filed an answer to said petition setting forth that the assessment and valuation of said property complained of was furnished and taken from the assessment of George Reese, Assessor of the county of Escambia, that the assessment by said Reese as County Assessor is the only basis upon which the city of Pensacola can levy and collect taxes, and that it is not the duty of the Comptroller of the State of Florida to furnish the city of Pensacola with the assessment and value of property of petitioner; that the assessment made by said Assessor for Escambia county is in accordance with law, and that the right of the city of Pensacola is legally restricted to said assessment and valuation in the collection of taxes due said city; that the assessment of said taxes by said Reese is in every respect legal; that the Board of County Commissioners approved said assessment by said Reese, and that petitioner never made any complaint thereat until the filing of this petition.

To the plea of abatement petitioner demurred on the ground that said Reese and said Walton were not necessary parties, which demurrer was sustained by the court.

·Petitioner also demurred to the plea of limitation on the ground that it furnished no answer to the relief sought, which demurrer was sustained by the court.

Petitioner demurred also to the answer on the ground that said answer did not set forth any sufficient defence to the petition, which demurrer the court sustained.

The court, on sustaining the demurrers to the pleas and answer, gave judgment that the assessment of the city of Pensacola on the property of petitioner for the years 1881 and 1883 was illegal and set aside the same; whereupon the defendant city appealed to this court, and assigns for error that—

1st. The court erred in overruling the plea in abatement.

2d. The court erred in overruling the statute of limitation.

3d. The court erred in deciding the assessment not lawfully made.

· *J. D. Thompson* for Plaintiff in Error.

The County Commissioners and Tax Assessor ought to have been made parties. Vide sections 33, 34 and 35, chapter 3219, act of March 5th, 1881, as amended by act of 1883, also section 17, chapter 3413, Laws of Florida. There is no law of Florida which authorizes an inquiry into the irregularity of a tax assessment. The Constitution of Florida, Article VI, section 8, providesamong other things that the Circuit Courts shall have original jurisdiction in all cases involving the legality of any tax assessment. The same rule is provided by statute. Vide section 4, chapter 151, Laws of Florida. An assessment is not necessarily void because it is irregular, nor is it illegal. Vide Cooley on Taxation, page 258; Libbey vs. Bumham, 15 Mass., 144, 147; Dows vs. Chicago, 11 Wallace, 108; Hughes vs. Kline, 30 Penn. St., 227; Chicago & Alton R. R. Co. vs. Frary, 22 Ill., 34; Smith vs. City of Leavenworth, 9 Kansas, 296; Tennson vs. Wilson, 9 Penn. St., 270. We think the judgment of the court below should be reversed and a judgment rendered in favor of the plaintiff in error.

*Wm. A. Blount* for Defendant in Error.

1. The court did not err in sustaining the demurrer to the plea in abatement. No relief was asked against either Reese or Walton, nor was there any reason for their presence in the litigation.

2. The court did not err in sustaining the demurrer to the plea of limitation.

The County Commissioners have power under the same act only to revise and equalize the valuation of assessments. Laws of 1883, pp. 26, 27.

They have no corrective power in any other respect.

Moreover, when the books were in the hands of the Commissioners the petitioner had no cause of complaint. Such cause did not arise until the assessment by the city was complete, and it became apparent that it was unlawful. At that time the statute provides no revising power.

3. The court did not err in sustaining the demurrer to the answer and in declaring the assessment not lawfully made.

1st. The revenue acts of 1881 and 1883 provide entirely different schemes for the assessment of ordinary real and personal estate and of railroad, road bed and rolling stock.

The method applicable to the former cannot be applicable to the latter, and if the law does not point out how, under the special columns, cities can tax railroads, then the power does not exist. But both the acts of 1881 and 1883 fail to provide for the apportionment by the Comptroller of the number of miles in cities. They only provide for the notification to the Assessor of the county of the proportionate value of the property in the " counties."

2d. But if the notification to the assessor of the county be construed to be of the length of miles of the road bed and proportionate values of it, and the rolling stock in the cities in the county, yet unless such proportionate value is furnished by him there can be no assessment by the city for the valuation is the only essential part of the assessment, and no one else but the Comptroller has any right to fix such valuation.

3d. But if the city was to be governed by the general law pointing out the method of assessing real estate and personal property, yet under the law of 1877, and 1883, p. 86,

sec. 1, the valuation is to be taken from the County Assessor's books. If those books show no valuation of that portion in the city, then there is no officer who has the power to fix it. Such is the case here, and the Assessor of the city seeing the difficulty merely divided the gross valuation, both of the road bed and the rolling stock in the county by the total length in the county, and multiplied by the assessed number of miles in the city. In other words, not having the actual value, he took the average value to each mile in the whole county, for which no warrant is to be found in the law.

4th. Moreover, a portion of the property is outside of the city limits, and of course it is unlawful for the city to tax such portion.

Of course, if such assessment is unlawful in any particular, it must be set aside. Jacksonville vs. Basnett, 19 Fla., 664.

THE CHIEF-JUSTICE delivered the opinion of the court:

The 1st point raised by the assignment of errors is whether or not J. B. Walton, Collector of Taxes, of the city of Pensacola, and George Reese, Assessor of Taxes, for the county of Escambia, should have been parties to the petition.

Walton, the Tax Collector of the City of Pensacola, was not a necessary party to this proceeding. The petition was filed for the sole purpose of declaring the assessment unlawful under the statute and asked no relief as against the Tax Collector.

As to the latter he had no authority as will be seen hereafter to assess of the extent and value of that portion of the railroad within the limits of said city, nor their passenger, freight, construction or other cars. The law did

not enjoin on him the assessment of this part of the property of a railroad company extending its line beyond the limits of said city.

It is, by the law, the sole duty of the Comptroller, to assess such part of the property of the railroad company extending into one or more counties or extending into a county and incorporated city or town.

The second assignment of error alleges that the court erred in overruling the plea of limitation as it is styled by the pleader, that is, that said Louisville and Nashville Company never applied to the Board of County Commissioners, at their meeting for the purpose of reviewing and equalizing assessments to set aside or reduce the amount at which said property was assessed. There was no error in sustaining the demurrer to this plea for the reason above as to the assessor. The duty of assessing the property, the assessment of which is complained of here by the petitioner, is vested exclusively in the Comptroller of the State, and the County Commissioners are not charged with any duty relating to the assessment of the same.

The third assignment of error is that the court erred in declaring said assessment unlawful.

The statutes of 1881 and 1883, which are substantially the same, so far as the purposes of this case are concerned, provide in section 45 of each, that the President and Secretary or Superintendent or Manager of any railroad in this State shall annually make a return to the Comptroller of the State under their oaths of the total length and value of such railroad, including rights of way, road bed, side track and main track, in this State, and the total length of the same in each county, city and incorporated town in this State, also of their locomotives, engines, passenger, freight, platform, construction and other cars and appurtenances.

These acts relating as they do to a special method of assessing a particular kind of property withdrew from the city the right of assessing under its general powers the the kind of property mentioned therein within its limits, to-wit: the side and main tracks, rights of way, road bed, locomotives, engines, cars, &c.

This view of the statute is very strongly supported by the Supreme Court of the United States in the case of The Union Pacific R. R. Co. vs. The City of Cheyenne, 113 U. S., page 516. In this case on a question arising upon the construction of a statute similar to the acts of 1881 and 1883, above mentioned, the court say : " It seems hardly to admit of a doubt that the object of this scheme was to withdraw the difficult task of assessing fractional parts of a railroad and its property from the hands of local assessors who could hardly be expected to proceed upon any uniform plan, and each of whom would naturally favor his own district." It is true that the acts are somewhat defective in said 45th section, in only requiring the Comptroller to notify the *Assessors of each county* of his apportionment. But if it was so defective as to be impossible of execution, such defect would not have the effect to render inoperative the clause which is the basis of each to charge the Comptroller solely with the duty of assessing this kind of property.

We think a fair construction of section 45 would authorize the Comptroller to apportion the extent and value of the portion of tracks and other property assessable by him to the incorporated towns and cities in each county, as well as the counties, and to notify the assessors of such county of such apportionment of the same. The assessment having been placed on the books of the assessor both as to the extent and value of said property within said city, the city

assessor could make his assessment from the book of the county assessor.

Section 46, in cases where the railroad officials make no return of the property, specifically authorizes the Comptroller of the State to ascertain the values required from the best information he can obtain, and apportion the same among the several counties, cities and towns through which the road runs. The petition alleges that there was not an apportionment under either of said acts to the city of Pensacola of any portion of said railroad property by the Comptroller, and that his apportioment of the part of said road to the county of Escambia and notification to the assessor of said county of the same did not specify the extent of value of that part of said road situated in said city. The Assessor of the city assumed that four miles of said road was within the city. It was neither his right nor his duty to ascertain the extent of the road within the city except from an apportionment made by the Comptroller as to such extent. The Comptroller, the petition alleges, never made such apportionment; this allegation is not denied by the defendant, and for the purposes of this case is admitted to be true.

The result is that the Tax Assessor of the City of Pensacola had no authority to make such assessment, and this part of the assessment is, therefore, unlawful.

As to the wharves and warehouses thereon, the petition alleges that they are not within the limits of the city of Pensacola, but said wharves are in the waters outside of said city; that it is true that the County Commissioners of said county of Escambia, in which said city lies, by proceedings instituted in the year 1877, attempted to extend the boundaries of said city one thousand yards into the water in front of said city, but that their act was without jurisdiction, because the corporate authorities of said city

never petitioned the said commissioners to enlarge the boundaries of said city. This allegation in the petition is not denied in the answer. The act of the Legislature, 1877, Chapter 3025, Sec. 2, provides that whenever in the opinion of the corporate authorities of any city or town in this State, its boundaries require to be enlarged, the commissioners of the county in which it is situated, may, upon petition of such corporate authorities, authorize such enlargement as may seem to them proper.

There can be no doubt either as to the construction of this statute or its application to this case.

Without the petition of the corporate authorities required by the statute, requesting the enlargement of the boundaries, the act of the commissioners authorizing the same was void.

There is but one other item of assessment left for our examination, and that is the depot lot on Government and Tarragona streets, valued at $6,000 in 1881, and $2,500 in 1883. This is not the kind or character of property, mentioned in the acts before alluded to, which the Comptroller of the State is required by law to assess. It was properly assessable by the Tax Assessor of the city under Chapter 3477, Act of the Legislature, 1883, page 86, under the general power granted to municipal corporations to assess and levy a tax upon all real and personal property within their limits.

The petition did not allege any illegality as to this item in the assessment, either as to the tax imposed or the method of assessing the property. An examination of the item in the tax list for 1881, will show that it is substantially in compliance with the law.

This part of the assessment we think is good.

The court, however, acting in pursuance and under the authority of Basnett vs. The City of Jacksonville, 19 Fla.,

page 664, held the entire assessment unlawful. We do not think the opinion of the court in this case is a correct interpretation of Section 4 of the statute, Chapter 151, Laws of Florida, which is as follows: " That in all cases where assessments are made against any person or persons, body politic or corporate, and payment of the same may be or shall be refused upon allegation of the illegality of such assessment, such person or persons, body politic or corporate, may apply to the Judge of the Circuit Court by petition setting forth the alleged illegality, and present the same, together with the evidence to sustain it, and the judge shall decide upon the same, and if found to be illegal shall declare the assessment not lawfully made."

It never could have been the intention of the Legislature to declare an entire assessment unlawful, when the alleged illegality was capable of separation from those parts of said assessment which were in conformity with the law, and which were in no manner attacked in the petition setting forth such illegality.

To give it such a construction would be, in effect, to make the judgment extend to and declare unlawful, items of the assessment which were not complained of or objected to by the petitioner or considered by the court in its judgment. An assessment can only be declared unlawful as a whole when the illegality of an assessment is of such a character that it affects every item in the list.

If there be items of assessment which are legal and other items which are illegal, the assessment under said act should only be declared unlawful in part, that is as to those parts that are illegal, and should be allowed to stand as to those parts that are legal, unless the legal and illegal are so blended as to be inseparable.

The said case of Basnett vs. The City of Jacksonville, so far as it conflicts with this opinion, is overruled.

Inasmuch as the judgment of the court below is reversed in part, and affirmed in part, and as the part of said judgment reversed was in accordance with the law, as it was declared by this court to be at the time of the ruling of the Judge in the court below, under the discretion vested in this court by rule 18, the plaintiff in error must pay the costs of this appeal.

Judgment reversed and cause remanded.