THE TOWN OF KISSIMMEE CITY, APPELLANT, VS. WILLIAM CANNON, APPELLEE.

1. The statute giving a remedy against illegal tax assessments by petition to the Circuit Court is still in force, and is not unconstitutional.

2. The right of a *de facto* officer, holding office under color of title, cannot be enquired into collaterally.

3. Where the Assessor made valuations in a memorandum book, and afterwards consulted with members of the equalizing board in regard thereto, and adopted suggestions of theirs in raising

his valuations on the final assesment roll, and no notice of this was given to the owner, this was not an illegal raising of valuations by the board, nor a violation of section 6 of the Kissimmee City act.

4. This act requires lots to be assessed and valued separately, but where the assessment and valuation in this respect is partly legal and partly illegal, as in this case, the Court should so declare, sustaining the former and setting aside the latter. But the Constitution (Sec. 8, Art. IX) forbids the granting of relief to the owner for the illegal assessment until the tax is paid on the portion legally assessed.

Appeal from the Circuit Court for Osceola County.

The facts of the case are stated in the opinion of the Court.

*E. D. Beggs* for Appellant.

*Foster & Gunby* for Appellee.

MAXWELL, J. : It is sought by the proceeding in this case, begun by petition under the statute, to have the assessment of appellee's real property in Kissimmee City declared "not lawfully made." Appellant attacks the proceeding in its foundation, contending that the statute under which it is brought is unconstitutional in embracing more than one subject, etc. This is founded on a mistake. When the statute was passed (1848) there was no such prohibitory provision in the constitution then existing, and when a part of the statute was repealed (1869) the fourth section was left, and was all that remained. Shear vs. Commissioners of Columbia County, 14 Fla., 146. This section is the one which authorizes a petition to have assessments, if found to be illegal, declared to be not lawfully made, and it was in force when the present constitution was adopted, and preserved in force by Sec. 2, Art. XVIII, thereof.

The grounds of complaint in appellee's petition are, first, that the assessment was made by one " not a legally elected or appointed Assessor of the town ;" second, that the assessment was " never legally reviewed " by the Board of Aldermen ; and third, that each lot was not valued separately, as the law requires.

There was a demurrer to the petition, in part on the ground that the Assessor, not being a party to the suit, his title to the office could not be called in question in this collateral way. The Court overruled this portion of the demurrer, and this is assigned here for error. The facts set out in the petition, which we need not recite, show that the Assessor held the office under color of title, and was recognized as Assessor by the Board of Aldermen of the town. This Court in the State vs. Gleason, 12 Fla., 190, has decided that "the right to an office cannot be enquired into collaterally," and that the acts of a *de facto* officer, exercising the duties of an office, are as "valid and binding upon the public, or upon third persons, as those of an officer *de jure.*" That is the law, and the Court erred in ruling otherwise. This disposes of the first ground of complaint in the petition.

The second ground is based upon the allegation that the Aldermen raised the valuation of the Assessor upon the land in an illegal manner by meeting with him before the time required by law, and agreeing what values he should assess, and without legal notice to appellee. This, it is argued, is in contravention of the sixth section of the act of June 8, 1889 (Chapter 3954) to enable the Town Council to levy certain taxes, and provide for a more complete assessment of the property in said town, which reads as follows: "That the Town Council of Kissimmee City shall meet on the second Wednesday in September of each

6 SUPREME COURT.

The Town of Kissimmee City v. William Cannon—Opinion of Court.

year, at the Council Chamber, for the purpose of equalizing the assessment of the real estate in said town of Kissimmee City, and to hear all persons who may be aggrieved by such assessment, and may change the value of any real estate; *Provided,* That should the Town Council increase any value fixed by the Assessor, they shall cause ten days' notice to be given to the owner or agent of said real estate of such increase, and the said Town Council shall meet on the fourth Monday in September in each year to hear the said parties, should they offer any objections to such increase."

The gist of the complaint is that the raising of the values of his property was made before the proper time, and that he had no notice of it. In the answer of appellant this action of the Aldermen in advising as to values is explained to have been not in their official capacity, but as individuals familiar with the property of the town, and with the values thereof, and that their meeting with the Assessor was not as a board, sometimes not more than two of their number being present; and it is further said that the Assessor requested their assistance that he might the better arrive at a correct valuation, it being his duty under the statute to ascertain by diligent enquiry all taxable property in the town, and to affix a valuation thereon, which duty is to be performed between the first day of June and the first day of September in each year; (Sec. 1 of Act); and also his duty to set down values " according to the best information he can obtain ;" (Sec. 3). And as to the requirement of the fifth section, that he shall complete the assessment on or before the first Wednesday in September of each year, and on said day meet with the Town Council for the purpose of reviewing the assessment roll, and the requirement of the sixth section quoted above, the answer says: " That be-

tween the first day of June and the first day of September of this year (1889) said Assessor did make an assessment of the   *   *  *   property of said town, and on the first Wednesday of September   *   *   did meet with the Town Council   *   *   for the purpose of reviewing the said assessment roll, and said Assessor and the Council did review said roll; that the property   *   *   of complainant was assessed and described upon said roll; that the Council met on the second Wednesday of September and equalized the assessment of the real property of said town, and for the purpose of hearing all persons who claimed to be aggrieved by said assessment, and complainant did not appear before the Council on said day and claim to be aggrieved by such assessment." And the answer further says that notwithstanding the Assessor advised with members of the Council as to valuations previous to returning the roll, "the valuations contained in the roll as presented on the first Wednesday of September, were the valuations of the Assessor;" that they were "affixed by the Assessor freely and of his own volition, entirely   *   *   untrammeled by said Council;" and that "in some instances the Assessor placed a higher valuation than that suggested at such meetings (with members of the Council), and in others affixed a lower valuation, while in others he adopted the suggestions made."

The testimony of the Assessor, his clerk and one of the Aldermen sustains these statements of the answer. It is shown that the valuations of the Assessor appearing on the assessment roll when completed and presented to the Council were not raised at its meeting on the second Wednesday of September, and hence there was no necessity for the notice to complainant under the statute, which he says was not given. The memorandum book showing these valuations, one by the owners, another by the Assessor, and the

third on the suggestion of members of the Council at their informal meetings with the Assessor, is not the assessment roll on which the Council acted officially when it met to perform the duty required by section 6 of the statute. But it is insisted that it was improper and illegal for the Assessor to change and raise his valuations at the instance of members of the Council, as was done, before making up his final roll. In other words, that where the values were thus raised this was anticipating the duty of equalizing the assessments on the second Wednesday of September, and thereby depriving owners of the benefit of the provision for notice. We cannot agree in this view. The final roll, however made up, was that to which the tax-payers were to look, and the statute gave them the privilege to be heard by the Council if they felt aggrieved by the valuation of their property in that roll. The complainant did not avail himself of this privilege, and we think he has no valid ground for saying now that the mode by which the Assessor came to arrive at his valuations in the end renders the assessment illegal. The Assessor did not in all instances adopt the suggestions of members of the Council, and he sought information from other citizens of the town; and there is nothing in the circumstances or in the evidence to indicate that he or the members of the Council were actuated by any other than proper motives. If there was a question of propriety in the matter, inasmuch as the assessment had to be reviewed afterwards by the members in their official capacity, that does not render their conduct illegal. It is not to be supposed, in the absence of evidence to the contrary, that in this review their minds were not open to fair consideration of any complaint against the assessment, and, in fact, it appears that in the only instance in which application was presented at the proper time for reduction of the valuation, a reduction was made.

The third ground of complaint in the petition, that in making the assessment each lot was not valued separately, is a good one to the extent that this is the fact. The statute (Sec. 3) expressly directs that the Assessor shall set down in the assessment roll "the value of each and every lot separately." In complainant's case only one lot is thus valued. The other lots, thirteen in number, have but a single valuation for the whole group. It is said this was because these are embraced in the same tract, and adjoin each other ; but that does not excuse the omission to value each separately. In this respect, therefore, the assessment was illegal.

The result is, that part of the assessment should be declared lawfully made, and another part unlawfully made (City of Pensacola vs. L. & N. R. R. Co., 21 Fla., 492), to-wit: the assessment of lot 7, block 11, should stand, while the assessment of the thirteen lots, from 6 to 18 inclusive, in Cannon's addition to Kissimmee City, should be declared unlawfully made. Lot 8, block 10, included in the decree as unlawfully assessed, is not the property of appellee, but of Mrs. Cannon, and while under our ruling it was properly assessed, it had no legitimate place in the decree in this case. But appellee is not entitled to relief for the part illegally assessed, except upon payment of that legally assessed, because this is prohibited by the Constitution, section 8 of Article IX, being that "no person or corporation shall be relieved by any Court from the payment of any tax that may be illegal, or illegally or irregularly assessed, until he or it shall have paid such portion of his or its taxes as may ·be legal, and legally and regularly assessed." It does not appear that the tax on the lot legally assessed has been paid. We think, however, that if appellee should pay this tax, relief may be granted as to the illegal

tax, and unless this is done promptly the petition should be dismissed altogether.   The decree will be reversed, and the case remanded for further proceedings in accordance with this opinion, the cost of this court to be taxed to appellee.

On application for a rehearing. '

MAXWELL, J.: A rehearing is asked in this case and in the other Kissimmee City cases on the ground that "the Court overlooked or did not consider the point raised in appellee's brief, that the (Kissimmee City) act having been passed more than sixty days after the annual election * * could not be retroactive, and no legal assessment could be held for 1889 under said act, but that the assessment for that year should have been under the old law."   It is true that in the opinion rendered the Court did not refer specifically to the point mentioned ; and this can be accounted for by the fact that the petition of appellee to have the assessment set aside did not allege as a ground of illegality that the · assessment was made under the act, instead of being made under the old law, but only that the Assessor was not legally elected, having been elected more than sixty days after the annual election of the town, and three days before the passage of the act; and by the further fact that in appellee's brief, besides referring to unimportant incongrui- ties and inconsistencies of the act, the principal reason in support of the point related to the illegality of the Assessor's election.   So that, in disposing of the question relating to the Assessor, the Court regarded the point mentioned in the petition for rehearing as also virtually disposed of. Moreover, except so far as it may be supposed that the act was not intended to be operative in the year 1889, because it was impracticable to appoint an Assessor for that year within sixty days after the annual town election, as the act

provides should be done, there can not be a question as to the intention of the legislature to make the act operative for the year 1889. This is shown by the express terms of the act itself. It was approved June 8th, 1889, and had no other purpose, as shown by its title, than to enable the Town Council to levy taxes and provide for a more complete assessment of the property of the town, and it directs (Sec. 13), "that this shall become a law in full force and virtue, upon its passage and approval by the Governor."

A rehearing is denied.