CITY OF TAMPA, PLAINTIFF IN ERROR, VS. ROBERT MUGGE et al., DEFENDANTS IN ERROR.

1. The statute, section 1542, Revised Statutes, contemplates the formation of an issue and a hearing upon the petition filed thereunder, when sufficient in allegation to show an illegality of assessment in point of law, and it should not be dismissed on a preliminary motion before final hearing on the ground that the evidence filed therewith is not such as is required by the statute.

2. Grounds of a demurrer based upon alleged averments in a

pleading, but which are not disclosed by the pleading exhibited by the abstract, to which no exceptions are filed and upon which the court must act, are without any basis of support and will be disregarded.

3.  A demurrer to the entire petition alleging several grounds of illegality in an alleged assessment of real estate is properly overruled, if any one ground is sufficient in itself to annul the assessment.

4.  An allegation in a petition, filed under section 1542, Revised Statutes, that the legally constituted assessing officer did not value or assess the real estate of petitioner, or other taxpayers in any manner, and the same was done by a named person who was not authorized by law to do so, is sufficient to show an illegal assessment in point of law.

5.  The provisions of the act to amend the city charter of the city of Tampa passed in 1895, Chapter 4496, laws of Florida, construed together, provide for a uniform and equal rate of taxation, and prescribe such regulations as will secure a just valuation of the real estate subject to taxation in said city.

6.  The act referred to in preceding head-note confers upon the Commissioners of Public Works of the city of Tampa full power as a board of equalization of real estate in said city and they may lower as well as increase assessments according to an equal valuation of said property.

7.  Under section 1542, Revised Statutes, the remedy provided against an illegal assessment does not extend to the correction of a mere erroneous exercise of official judgment as to the valuation of real estate in its assessment.

8.  An allegation to the effect that the members of the Board of Public Works of the city of Tampa met in a room near that of the assessor and actual notice was given to all applicants of the place of meeting, with full opportunity to all to be heard, shows a substantial compliance with the provision in the thirty-sixth section of chapter 4496, that said commissioners while sitting as a board of equalization, shall meet at the office of the city assessor for the purpose of hearing all persons who feel aggrieved by the action of the assessor.

9.  A valid assessment is sufficiently shown by the proper assessing officer though it appear with his consent and approval another person was employed to do clerical work in writing up the assessment roll and put valuations of property thereon,

if it was done either under the personal supervision and direction of the assessor, or he personally considered and adopted the same.

10   The copy of the assessment roll required by section 38, Chapter 4496, must be made after the assessment has been completed, and under the remedy given by statute for an illegal assessment, a failure to make said copy is not available as a ground for annulling the assessment.

11.   Taxpayers who place valuations on their property for taxation and which are accepted as correct by the assessing officers, are estopped from questioning such values.

12.   Under the Constitution, Article IX, section 6, no person shall be relieved by any court from the payment of any tax that may be illegal, illegally or irregularly assessed, until he shall have paid such portion of his taxes as may be legal and legally or regularly assessed, and when it is made to appear that a petioner alleging illegality of an assessment of real property owns personal estate, properly assessed, and as to which there is no ground of illegality, relief should not be granted on the ground alleged, until the personal tax is paid or tendered.

13.   The remedy provided for an illegal assessment by section 1542, Revised Statutes, does not authorize the joinder in one petition of several tax payers as to whose assessments diverse questions are presented and with respect to which there is no community of interest.

14.   The power conferred upon the city of Tampa by section 37, Chapter 4496, to the extent of levying taxes to pay interest on bonds is confined, as to such taxes, to meet the interest on bonds outstanding at the time of the levy.

15.   Where a portion of taxes levied is legal and a portion is illegal, and the illegal portion can be separated on the assessment list without impairing those that are legal, it is error to declare the entire assessment unlawfully made.

Writ of Error to the Circuit Court for Hillsborough county.

### Statement.

Robert Mugge and over forty others filed a petition under the statute in May, 1897, alleging that they were

the owners of real estate in the city of Tampa subject to taxation, and that the city had assessed and levied upon their real estate for the year 1896 municipal taxes, payment of which had been refused because of the illegality of the assessment. The grounds of illegality in the assessment alleged are: 1st. That there was no law in force in said city securing a uniform and equal rate of taxation and a just valuation of their property; that the only law in force under which said assessment and levy were made was contained in Chapter 4496, laws of Florida, which provided that the assessor should visit and inspect all real estate in said city and affix a valuation thereon, thus leaving it to him to place any valuation thereon that he might deem proper; that the thirty-sixth section of said act provided that the Commissioners of Public Works should sit as a board of equalization on the first Monday of July of each year for the purpose of hearing persons who might be aggrieved, and might recommend the alteration of assessments of real estate, but no power was conferred upon said board, nor any other officer, to lower the valuations of real estate after the same had been fixed by the assessor, unless the same is vested by implication in the city council, and upon information and belief it is alleged that the council had refused to hear the complaints of taxpayers aggrieved by the action of the assessor. Further, that no ordinance had been passed by the city to secure to taxpayers a uniform and equal rate of taxation, or a just and equitable valuation of assessment. 2nd. That the rate of valuation of assessment of petitioners' real estate was neither just nor equitable; the same, or a large part thereof, was valued for taxation at a much higher rate proportionately than that of many other taxpayers in the city, by reason whereof petitioners were required to pay more than their fair proportion of the city taxes,

reference to the assessment roll of the city being made in proof thereof. 3rd. That the assessor did not visit and inspect the real estate of petitioners, or other tax-payers of the city, for the purpose of fixing a valuation thereon. And upon information and belief it is alleged that the assessor did not value or assess the real estate of petitioners or other taxpayers in any manner, but the same was done by S. L. Biglow, clerk of the Board of Public Works, who was not authorized by law to do the same. Also, that the Commissioners of Public Works did not meet with the assessor at his office, or elsewhere, on the first Monday of July, or at any other time, for the purpose of reviewing the assessment roll and equal-izing taxes, and that the assessor prepared only one as-sessment roll, instead of two as the law required. 4th. That the council levied a four-mill tax to pay the inter-est on $258,000 of city bonds which had never been sold or hypothecated, and for which the city had never re-ceived one dollar. There was attached an affidavit of one of the petitioners, to the effect that the allegations of the petition were true of his own knowledge, except as to those matters alleged upon information and belief, and as to those he believed them to be true. The affi-davits of five other of the petitioners were attached, all stating in substance that affiants were residents and tax-payers of the city of Tampa, and acquainted with the values of real estate in the city; that they had exam-ined the assessment roll of the city for the year 1896, and the valuation of property for taxes thereon was neither just nor equitable, and the real estate of some of the taxpayers was valued at, or beyond, its actual value, while that of others was valued far below its actual value; that affiants were informed and believed that the valuation and assessment of real estate for tax-ation for the year 1896 were not made by M. B. Knight,

assessor of the city, but were made by S. L. Biglow, clerk of the Board of Public Works. Further, upon information and belief, that the council of said city had refused to hear the complaints of taxpayers who were aggrieved, and that the Board of Public Works did not meet with the assessor at his office on the first Monday of July, 1896, or at any other time thereafter, for the purpose of equalizing the assessment or hearing complaints, but if they met at all it was at their own office with S. L. Biglow, clerk of said board. It is also stated, upon information and belief, that a four-mill tax had been levied to pay the interest on bonds which had never been sold or hypothecated by the city. Petitioners also attached to their petition a list of the property that was for sale for taxes, a list of that claimed to be owned by petitioners and a certified copy of a portion of the minutes of the council showing that petitions for reduction of taxes, presented on the 22nd of January, 1897, were referred to the Board of Public Works. The court denied a motion to strike the petition on the ground that there was not filed therewith the evidence required by the statute. A demurrer to the petition was also overruled.

The city then filed an answer—

1st. That the petitioners were the owners of land in the city liable to taxation, and that municipal taxes had been levied for the year 1896 of the amount of twenty-five mills on the dollar, four mills of which were for paying the interest on bonds; that petitioners had refused to pay the taxes on the ground that the assessment was illegal, but respondent denied that the same was illegal, and alleged that the same was legal and binding upon petitioners; that the council of said city had refused to correct the assessment made by the assessor, and reviewed and equalized by the Board of Public

Works, for the reason that the council had no power to sit as a board of equalization, that power being confined exclusively to the Board of Public Works * * * It is denied that the valuations of petitioners' property, or any part of it, for taxation for said year were unjust and unequal, or that any part thereof was valued at a higher rate proportionately than other taxpayers, and it is affirmed that the property of all taxpayers in the city was valued at an equal and proportionate valuation, and petitioners were only required to pay their just share of the taxes according to the value of their property.

2nd. Further, that by reason of the extra work entailed upon the auditor by the city charter, it was necessary for him to employ assistance in writing up the assessment roll, and that under a resolution of the council, and with the consent of the auditor and assessor, one S. L. Biglow was employed to assist the assessor in making up the roll, said assistant doing the clerical work; that the assessor at the proper time sent by mail to the owners of real and personal property, including many of the petitioners, assessment blanks whereon to make return of their property, and a large number of them, including many of the petitioners, made returns to the assessor both by mail and personally, and the assessor handed said returns to said assistant, Biglow, who entered them on the roll; that all of the personal property, and a large part of the realty, was assessed at the valuations placed thereon by the owners in said returns, and when the clerical work of writing up said roll was completed, Biglow delivered the same to the assessor, and after the Board of Public Works had reviewed and equalized the roll, the assessor attached thereto the oath and signed the certificate required by the charter; that the assessor frequently saw the roll while Biglow was writing up the same and the valua-

tions put upon the property, and approved the same, thus making the assessment his, and that by the acceptance and approval of the work of Biglaw, and the review and correction of the roll, the assessor adopted, ratified and approved the valuations on all of the property on the roll, and the valuations thereby became the assessor's.

3rd. It is denied that the Board of Public Works did not meet at the office of the assessor or elsewhere, and it is alleged that said board did meet at its office in the city, a short distance from the office of the assessor, at the time required by the charter, for the purpose of reviewing and equalizing the assessment roll, and notice of such meetings was published in the daily papers of the city, and at the office of the assessor all persons who appeared for the purpose of inspecting their assessments were notified of the place where said board was sitting, and directed to go there; and that said board at such time did review and equalize said roll, and passed upon complaint and objections of persons appearing before them, including many of the petitioners.

4th. It is alleged that petitioner Mugge placed his own valuations upon all of his real and personal property, and the same were entered upon the assessment roll at the valuations placed by him; that petitioner Boaz returned his personal property for said year, and the same was assessed at the valuations made by him and he also appeared before the board and had the valuations of his property adjusted satisfactorily; and other petitioners, naming them, did likewise, or expressed themselves satisfied with the assessments; and further, that none of the petitioners had ever paid or tendered said taxes due on the property, or any part thereof.

5th. That at the time of the levy of the tax referred to for interest on the bonds there were outstanding

bonds of the issue of 1889 of $100,000, with interest at seven *per cent. per annum*, and also bonds of the issue of 1896 of $45,000, with interest at six *per cent. per annum*; that prior to said levy the city had made a contract of sale for the entire issue of $300,000 of the bonds of 1896, of which $45,000 were a part, and just prior to said levy of taxes the purchaser notified the city, through the Board of Public Works, that he would take and pay for $100,000 of said bonds, and as the purchaser, under said contract, was to take the entire balance of the issue before the next tax levy, the city, having reasonable grounds to believe all of said bonds would be sold, and that two semi-annual payments of interest would be due before the next tax levy, levied a four-mill tax for the payment of the interest on these bonds. It is also alleged that the four-mill rate for the bond tax, had it all been paid, would have amounted to about $21,000, and, deducting delinquencies, the amount expected would be about eighteen or nineteen thousand dollars, which it was reasonably believed would be needed for the payment of interest on bonds before the next tax levy.

A demurrer to this answer was sustained, and the city declining to further answer, judgment was rendered that the tax assessment for the year 1896, so far as petitioners' property was concerned, was illegally made, and was set aside as illegal and invalid.

*William Hunter*, for Plaintiff in Error.

No appearance for Defendants in Error.

MABRY, J.:

We held in the case of City of Tampa v. Kaunitz, decided at the last term (39 Fla. 683, 23 South. Rep. 416), that when a demurrer to a petition, filed under

section 1542 Revised Statutes, was overruled, the court should require proof of the allegations thereof as to questions of fact relied upon before entering final judgment declaring the assessment not lawfully made. The contention is made in the present case that under the statute the proof must be filed contemporaneous with the petition, and when that filed is not sufficient the petition should be dismissed on a preliminary motion before answer or final hearing. This view we hold to be incorrect. The statute does not exclude the formation of an issue upon the petition and a hearing thereon, but contemplates this, we think. Cases heretofore brought to this court proceeded upon this construction of the statute, and it was not disapproved. Town of Kissimmee City v. Cannon, 26 Fla. 3, 7 South. Rep. 523; City of Pensacola v. Louisville & Nashville R. R. Co., 21 Fla. 492. When the illegality of assessment set up in the petition is based upon matters of fact requiring proof, the court should not, in overruling a demurrer to a petition, render final judgment without proper evidence, but when matters purely of law are relied on, or when the matters of fact are admitted in an answer, in the nature of things there will be, no necessity for the presentation, as to them, of any proof. We are of the opinion that when the petition presents facts showing illegality of an assessment, it should not be dismissed on a preliminary motion before a final presentation and hearing, on the ground that the evidence filed is not such as is required by the statute.

The demurrer of the city was to the entire petition, assigning several grounds. Two of the grounds sought to raise the objection of a misjoinder of plaintiffs, and that two or more persons could not join in such a proceeding unless they were joint owners of the property assessed. The petition exhibited by the abstract, which

has not been excepted to, and upon which we must dispose of the case, does not show a several ownership of several tracts of land in petitioners, as counsel contends. It states that petitioners were the owners of real estate in the city of Tampa subject to taxation, and that the city had assessed and levied upon their real estate municipal taxes. There is nothing in the petition, or anything filed therewith, as disclosed in the abstract, showing a several holding by petitioners of the real estate alleged to have been illegally assessed, but under the allegation made petitioners would have a clear right to rely upon a joint ownership. If petitioners had a joint interest in the real estate, the assessment of which is complained of, it is not questioned that they could jointly file the petition. The question sought to be raised of a several interest of petitioners in the real estate assessed does not properly arise on the petition presented to us by the abstract, and we perceive no error in the refusal of the court to sustain the demurrer on the ground stated.

The demurrer questions the sufficiency of the petition in that it alleges no illegality of assessment of personal property, and shows no payment, or tender of payment, of taxes thereon. The petition exhibited by the abstract does not show that petitioners owned any personal property subject to city taxation, and there is therefore no basis of support for this ground of demurrer.

The demurrer being to the entire petition, it was properly overruled if any one of the grounds set up for annulling the assessment is sufficient in itself for that purpose. It is alleged in the third paragraph of the petition that the assessor did not value or assess the real estate of petitioners, or other taxpayers in any manner, but the same was done by S. L. Biglow, clerk of the

Board of Public Works, who was not authorized by law to do so.   If this allegation be true the assessment was void under our previous decisions in Town of Kissimmee City v. Cannon, 26 Fla. 3, 7 South. Rep. 523; City of Tampa v. Kaunitz, 39 Fla. 683, 23 South. Rep. 416.   In the last case mentioned our holding was that an assessor of taxes may avail himself of the services of other persons in performing duties of a clerical or ministerial nature, requiring no exercise of official discretion, and involving no substantial rights of the persons against whom assessments are made, and if such work is done under the supervision of the assessor, or he ratifies or adopts it, the assessment will be valid; but if the assessor permits other persons to perform all duties relating to the assessment for an entire tax year, while he abstains from any duty connected therewith, such assessment will be a nullity.   The principle here announced sustains, on demurrer, the petition as to the allegation of the illegality of the assessment on the ground that it was not made in any manner by the assessor.   Without reference to any further ground of this demurrer, we are of the opinion that the court did not err in overruling the demurrer to the petition.

Under the further assignment of error that the court erred in sustaining the demurrer to the answer, the merits of the controversy, as disclosed by the pleadings and exhibited to us by the abstract, will be considered.   Defendants in error have filed no brief, and we have no information from them upon what ground or grounds the court sustained the demurrer to the answer.   The ground of illegality in the assessment alleged in the first paragraph of the petition is that there was no law in force in the city of Tampa securing a uniform and equal rate of taxation, and a just valuation of petitioners' property which, as disclosed by the petition ab-

stracted, was real estate only. The only law in force
under which the assessment and levy were made is stated
to be the act of 1895, Chapter 4496, which provided
that the assessor should visit and inspect all real estate
in the city and affix a valuation thereon, and that this
left it to him to place any valuation thereon that he
might deem proper. It is also alleged in this paragraph
of the petition that while the act provided for meetings
of the Commissioners of Public Works as a board of
equalization to hear persons who might be aggrieved,
and recommend alterations of assessments of real estate,
no power was conferred upon said board to lower the
valuations of real estate fixed by the assessor, nor was
such power conferred upon any other officer, unless by
implication on the city council, and that this body had
refused to hear the complaints of taxpayers. Section 1,
Article 9, of the Constitution enacts that "the Legisla-
ture shall provide for a uniform and equal rate of taxa-
tion, and shall prescribe such regulations as shall secure
a just valuation of all property, both real and personal,
excepting such property as may be exempted by law
for municipal, educational, literary, scientific, religious
or charitable purposes;" and the provision in the fifth
section is, that "the Legislature shall authorize the sev-
eral counties and incorporate cities and towns in the
State to assess and impose taxes for county and muni-
cipal purposes, and for no other purposes, and all prop-
erty shall be taxed upon the principle established for
State taxation; but the cities and incorporated towns
shall make their own assessments for municipal purposes
upon the property within their limits." It is alleged,
and not denied, that the city of Tampa had enacted no
ordinances on the subject of assessments of property,
and we have no question arising under such an ordi-
nance as was shown in the case of Pratt v. City of Jack-

sonville, 36 Fla. 550, 18 South. Rep. 362. Section thirty-seven of the Charter act, Chapter 4496, authorizes the city of Tampa to raise by taxation such an amount as may be necessary for carrying on the government of said city, not to exceed twenty mills on the dollar on the actual cash value of all the property in said city, both real and personal, and in addition thereto shall have the right to levy such additional taxes as may be necessary to pay the interest on the outstanding bonds of said city, and such additional bonds as the said city may from time to time issue in accordance with law, and also provide a sinking fund for the redemption of said bonds when the same mature." The levy authorized by the act is to be made upon an assessment of all the property of the city liable to taxation, after an official estimate by the city council, with the approval of the mayor, of the amount required for each department of the city. The thirty-first section makes it the duty of the city assessor to ascertain by diligent inquiry between the first of April and the first of July of each year, all taxable property, real and personal, and the names of the persons owning the same, on the first day of April in each year, and make an assessment of all taxable property. He is directed to visit and inspect all real estate and affix a valuation thereon. If this section was all the regulation on the subject of assessing real estate, it might be contended, as seems to be the basis of attack in the petition, that the assessor could put arbitrary valuations theron with no rule of law to govern him, but there are other provisions in the act bearing upon his duties in reference to valuations. The thirty-third section provides that he "shall set down in the assessment roll in the separate columns according to the best information he can obtain, first, a description of each tract or parcel of land, specifying under appropriate heads the numbers

of lots, blocks and additions or subdivisions of the said city in which the land lies, according to the plats on file in the office of the clerk of the Circuit Court in Hillsborough county, and in case the land is not platted, then by subdivisions of the United States survey, or the fractional parts thereof, and the value of each and every lot separately. The thirty-seventh section requires that the levy of taxes shall be based upon the actual cash value of all the property in the city, and this value is ascertained by the assessment made by the assessor after being equalized by the Board of Commissioners of Public Works. The positive requirement is that the assessor shall set down in the assessment roll, in the separate columns, according to the best information he can obtain, not only a description of each tract or parcel of land by subdivisions given, but the *value* of each and every lot separately. Value must be ascertained by the standard of market worth, and as contemplated by the act it must be a cash value. It can not be affirmed, we think, that the charter act fails within itself to provide regulations for a uniform and equal rate of taxation, and a just valuation of the real estate subject to taxation in the city. Conceding in this case that an equalization of real estate must be provided for, of which the taxpayers must be accorded a hearing, there can be no doubt, we think, that such power is conferred upon the Commissioners of Public Works. The eighteenth section of the act provides for the election of a Board of Commissioners consisting of four members to be called Commissioners of Public Works, and upon them is imposed the duty of equalizing the assessments made by the city tax collector as provided in the act. It is further provided in the thirty-sixth section that "the board of equalization shall meet at the office of the assessor on the first Monday of July each year, for the purpose

of hearing all persons who may be grieved, and may recommend the alteration of the assessment of any real estate; and for the purpose aforesaid the board of equalization shall sit for three days, or longer if necessary, provided that should said board of equalization increase any value fixed by the assessor, they shall give ten days' notice to the owner or agent of said real estate of such increase." The purpose was to confer upon the Commissioners of Public Works the full power of a board of equalization as to real estate, and to either increase or lower assessments according to an equal valuation of the real property in the city. The recommendation may be in the lowering, as well as in the increasing of valuations, and when made will control the assessment made by the assessor. To give the word "recommend," in the connection in which it is found, such a meaning is in harmony with the manifest purpose of the Legislature, and does no violence to any part of the act in which it is found.

The second paragraph of the petition sets up as a ground of illegality that the rate of valuation of assessment of petitioners' real estate was neither just nor equitable, and that it, or a large part thereof, was valued for taxation at a much higher rate proportionately than that of many other taxpayers in the city, by reason of which petitioners were required to pay more than their fair proportion of the city taxes. This allegation is fully denied by the answer, and it can not be that the court based its ruling on this paragraph of the petition. It was held in Shear v. County Commissioners of Columbia County, 14 Fla. 146, that the statute giving a remedy for an illegal assessment embraced only those assessments in which there was error in matters of law, and that the judgment of County Commissioners (acting as an equalizing board) upon a complaint for the abate-

ment of a tax was a judicial act in which the exercise of discretion in fixing values could not be reviewed by any other tribunal. Under this construction of the statute the remedy provided thereby against an illegal assessment does not extend to the correction of a mere erroneous exercise of official judgment as to the valuation of property in its assessment.

The illegality of assessment set up in the third paragraph of the petition is based upon the following grounds: First, the assessor did not visit and inspect the real estate of taxpayers for the purpose of fixing a valuation thereon; second, that he did not assess the real estate in any manner, but the same was done by an unauthorized person; third, that the Commissioners of Public Works did not meet with the assessor at his office or elsewhere, on the first Monday of July, or at any other time, for the purpose of reviewing the assessment roll and equalizing taxes; and, fourth, the assessor prepared only one assessment roll instead of two as the law requires. As to the second ground stated, that the assessor did not assess the real estate in any manner, it is good in point of allegation, but we are of opinion that it is sufficiently met by the answer. It is alleged that Biglow was employed to do clerical work in writing up the assessment roll, and that he entered thereon returns handed to him by the assessor. If it be conceded from what is stated that he placed valuations on property in writing up the roll not included in returns handed to him, it is also shown that this was done either under the personal supervision and direction of the assessor, or he personally considered and adopted the same. Under our decisions cited, Town of Kissimmee City v. Cannon, and City of Tampa v. Kaunitz, the answer sufficiently shows a valuation of property by the assessor by a personal approval and adoption of values placed on the roll,

and an assessment in fact by him. The further objection, stated as the third ground, is based not upon any default of the assessor, but an alleged failure of duty on the part of the Commissioners of Public Works. By the thirty-sixth section of the act, the Commissioners, sitting as a board of equalization, is required to meet at the office of the assessor on the first Monday of July each year, for the purpose of hearing all persons who feel aggrieved by the action of the assessor. This duty of the Commissioners is independent of that of the assessor. Conceding that the place of meeting is essential, we are of opinion that the answer shows a substantial compliance with this requirement. It is alleged that the board met at the time required by law for the purpose of equalizing taxes at its office, a short distance from that of the assessor, and not only all persons were notified of this place of meeting by publication in the daily papers, but all persons who applied at the assessor's office for the purpose of examining the assessment roll were actually notified of the place, nearby, where the equalization board was in session for the purpose of equalizing assessments. From what is stated it appears that the board met in a room near that of the assessor and actual knowledge was given to all applicants of the place of meeting with full opportunity to all to be heard. The answer does not respond to the fourth ground stated, that only one assessment roll was made out by the assessor, and we must regard this allegation as true in considering the sufficiency of the answer as a defense to the action. After the assessment has been made and equalized by the board of equalization, and a levy of taxes made, the assessor is required to calculate and carry out the several amounts of taxes in separate columns, provided for the purpose, in the assessment roll, setting opposite the several sums set down

on the valuation of real and personal property, the respective sums assessed for taxes thereon in dollars and cents, rejecting all fractional parts of a cent. He is also required to add up all the columns of the assessment and taxes contained in the assessment roll, making thereon such recapitulatory tables as required by the council and then make out a copy of said assessment roll as completed. To the original and copy an affidavit by the assessor is required to be annexed. This work on part of the assessor is directed to be performed by the fourth Monday in July, each year, at which time the city council shall examine the original and copy, and if found correct shall so certify upon each book, which certificate shall be signed by at least a majority of the members of the city council. The assessor is then required to deliver the copy of the assessment roll to the city clerk and deliver the original, with warrant attached, to the tax collector. It is apparent from the statement given that the copy required is to be made after the assessment roll is complete, and while the copy of the roll tends to the security of the taxpayer, and a failure to make and file it might affect a tax sale, we are of opinion that under the remedy given by the statute for an illegal assessment, the failure to make and file the copy, a subsequent act to the completed assessment, is not available as ground for setting aside the latter. The making of the copy can not, of course, change or correct the original which is to be complete as an assessment roll before the copy is made. It may be that the copy can be made at a subsequent date and still meet the requirements of the statute. As the remedy under the statute is confined to an illegal assessment, the defect in failing to file the copy required can not be reached by it.

In response to the first ground of illegality stated

in the third paragraph of the petition, that the assessor did not visit and inspect the real estate of the taxpayers for the purpose of valuation, the answer alleges that petitioner, Mugge, placed his own valuations on all of his real estate and personal property which were entered upon the assessment roll at his valuations; that petitioner, Boaz, returned his personal property for taxation which was assessed at the valuations fixed by him, and he also appeared before the board and had the valuations of his property adjusted satisfactorily to him, and that other petitioners, naming them, appeared before the board and had their valuations adjusted, or expressed themselves satisfied therewith. Taxpayers who place valuations on their own property for taxation, and which are accepted as correct by the assessing officers, as well as those who appear before the equalizing board, and have values on their property adjusted satisfactorily to them, are estopped from questioning such values, even if they are otherwise permitted to raise such a question under the remedy given by the statute. The principle of estoppel announced in the case of Town of Kissimmee City v. Cannon, *supra*, sustains this conclusion. The answer shows that some of the petitioners were estopped from questioning the assessment of real estate on the ground stated, and as to them the assessment should not be annulled because the assessor did not visit and inspect the property.

It is also shown by the answer that some of the petitioners owned personal property as to which there is no complaint of illegality of assessment. The constitution provides that no person shall be relieved by any court from the payment of any tax that may be illegal, illegally or irregularly assessed, until he shall have paid such portion of his taxes as may be legal and legally or

regularly assessed. Article IX, Section 8. Under this provision the court would not be authorized to grant any relief to the petitioners owning personal estate properly assessed on account of the assessment of real estate until the personal tax was paid or tendered. They would be in no situation to ask relief.

But in addition to what has been stated, it further appears from the answer that petitioners were several owners of the real estate involved in the assessment in question. The statute provides a remedy for an illegal assessment and does not contemplate, in our opinion, the joinder in one petition of several taxpayers as to whose assessments diverse questions are presented, with respect to which there is no community of interest or concern. The statute enacts that "in all cases where assessments are made against any person, body politic or corporate, and payment of the same shall be refused upon allegation of the illegality of such assessment, such person, body corporate or politic may apply to the judge of the Circuit Court by petition setting forth the alleged illegality, and present the same, together with the evidence to sustain it, and the Judge shall decide upon the same, and if found to be illegal shall declare the assessment not lawfully made." Section 1542, Revised Statutes. This remedy is purely legal, and there is nothing in the language of the statute to change the general rule at law, that several owners of several parcels of property can not unite in one suit affecting the same. By the allegations of the answer, admitted to be true on demurrer, it was clearly made to appear that the assessment should not have been annulled as to some of the petitioners, so far as the allegations in the third paragraph of petition go, and there was, therefore, error in the ruling of the court sustaining the demurrer and annulling the assessment. We are furthermore of the

City of Tampa v. Mugge—Opinion of Court.

opinion that upon the presentation to the court of a record showing a several interest of petitioners in several parcels of real estate alleged to have been illegally assessed, it would be the duty of the court to dismiss the petition in toto.

The remaining ground of illegality in the assessment, found in the fourth paragraph of the petition, is that the city had levied a four-mill tax to pay interest on $258,000 of city bonds which had never been sold hypothecated. In addition to the levy for carrying on the government, the city was authorized by the act to levy such further taxes as might be necessary to pay interest on the outstanding bonds at the date of the act and such as might thereafter be issued in accordance with law, and also to provide a sinking fund to pay the principal of said bonds when mature. The answer filed by the city admits that the four-mill tax of 1896 was entirely to pay interest on bonds, and the authority given for this purpose authorized a levy to meet the accruing interest on bonds then outstanding and for which the city was liable. It appears from the answer that the city had made two issues of bonds, one in 1889, and the other in 1896, and of the issue of 1889 $100,000 of bonds, bearing interest at the rate of seven *per cent. per annum*, were outstanding when the levy was made. The entire issue of 1896 amounted to $300,000 bearing six *per cent.* interest *per annum*, and it seems that the city had entered into some kind of a contract of sale, the nature of which is not definitely stated, of this issue. It is definitely stated that of this issue $45,000 of bonds were outstanding when the levy was made, and that just before the levy the purchaser had given notice that he would take and pay for $100,000 more of these bonds. The remainder of the bonds of 1896, amounting to $155,000, had not been taken when the levy was made,

but the city estimated interest on them in making up the amount to be raised for interest purposes. No interest could accrue on the bonds as against the city until they were outstanding, and according to the statement of the answer there were at least $155,000 of bonds, included in the interest estimate, not outstanding when the levy was made. There is an indefinite statement in the answer, that as the purchaser, under the contract, was to take the entire balance of the bonds before the next tax levy, the city, having reason to believe all of said bonds would be sold, levied a four-mill tax to pay interest on them. This is an admission that $155,000 of the bonds were not then outstanding, but the levy was made in anticipation of their sale. On the pleadings it appears that a four-mill tax was made to pay interest on bonds, $155,000 of which were not outstanding when the levy was made. The amount to be raised by this tax, as disclosed by the answer, shows that it was in excess of the necessary sum to pay interest on such bonds as were then outstanding.

This four-mill tax, however, is distinct from that raised for carrying on the city government, and if entirely illegal would not authorize the decision made in the case. It is error under the statute to declare the whole assessment to be unlawfully made where the illegal items can be separated from the assessment list without impairing those which are legal. City of Pensacola v. Louisville & Nashville R. R. Co., 21 Fla. 492.

The judgment is reversed and cause remanded for further proceedings in accordance with this opinion.